# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN RYAN MILLER** | Case No. |
| Plaintiff | **COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF** |
| v. | **42 U.S.C. §§ 1983, 1988** |
| THOMAS NELLING, JOSEPH ELIAS, TRACEY LAWS, MITCHELL ROCK, THOMAS GOGGIN, JOHN O'DONNELL, DAVID SASSA, ROBERT DOUGHERTY, DEBRA RYAN, ROBERT LACOURT, RICHARD FINFROCK, FRANK GALBRAITH, MARY FRIEDBERG, DOLORES D'AMORE, JACK LAUFER, GERALD BOOMER, HOWARD HOLLAND, GEORGENE D'. CARBO, LISA TARASCHI, WILLIAM MOSSMAN, ROBERT CLARKE, MICHELLE MAJOR, JOSEPH HEYMAN, MATT WILLIAMS, CHRIS YEAGER, JOE MILES, DIXIE STRACHNIK, CALVIN WILSON, BENJAMIN PRATT, WILLIAM HOLDSWORTH, MATTHEW GORDON, MARC PARTEE, LOUIS MARCELLI, MATTHEW DELCHERT, ANN GERY, SAMUEL IACONO, MARIA AVALA, BRIAN SHELLER, SHAREN MAITTLAND, RACHEL ZELTMAN, ANDREW LOVETTE, WILLIAM ROZIER, MELISSA LAUGHLIN, ERIN BURLEW, KEVIN KOCHKA, SANJAY BRIDGES, BRIAN MARSHALL, DANIELLE WADE, MICHAEL HAWLEY, JOHN FRYE, KEVIN PIERCE, CHIEF SIMPSON, RYAN WHITE, TIMOTHY BROWN, MIKE BEATY, JOHN DEMARCO, SCOTT ALEXANDER, TIMOTHY PARKER, JEFF KIMES, THOMAS SIEDENBUEHL, JAMES MOREHEAD, RAYMOND STEVENSON, ERIC HUGHES, MICHAEL CARROLL, JESSICA HARPER, SHANE CLARK, MICHAEL SWININGER, LEE BENSON, JENNIFER KELLER, LEE BENSON, YVETTE JOHNSON, BRENDA M. BERNOT, DIANE MOORE, JILL HARDY, JEFF CURTIS, BRIAN NORRIS, LISA BOWMAN, SAM GANOW, JARED ZIMMERMAN, CHARLIE KOENNECKER, BRIAN FOX, MATT HURLEY, JOHN PROPPER, MICHELLE ORNER, LISA YELOVICH | |
| Defendants. | |

DEFENDANT ADDRESSES:

| Defendant # | Name | Company | Address | City | ST | Zip |
|---|---|---|---|---|---|---|
| Defendant 1 | Jill Hardy | Octorara School Board | 228 Highland Road | Atglen | PA | 19310 |
| Defendant 2 | Jeff Curtis | Octorara School Board | 228 Highland Road | Atglen | PA | 19310 |
| Defendant 3 | Brian Norris | Octorara School Board | 170 Dallas Street | Atglen | PA | 19310 |
| Defendant 4 | Lisa Bowman | Octorara School Board | 3718 Homevill Road | Cochranville | PA | 19330 |
| Defendant 5 | Sam Ganow | Octorara School Board | 1401 Homeville Road | Cochranville | PA | 19330 |
| Defendant 6 | Jared Zimmerman | Octorara School Board | 7151 White Oak Road | Christiana | PA | 17509 |
| Defendant 7 | Charlie Koennecker | Octorara School Board | 21 Harvest Drive | Cochranville | PA | 19330 |
| Defendant 8 | Brian Fox | Octorara School Board | 303 Fawn lane | Cochranville | PA | 19330 |
| Defendant 9 | Matt Hurley | Octorara School Board | 227 Old Racetrack Road | Parkesburg | PA | 19365 |
| Defendant 10 | John Propper | Octorara School Board | 17 Harvest Drive | Cochranville | PA | 19330 |
| Defendant 11 | Michelle Orner | Octorara School Board | 228 Highland Road | Atglen | PA | 19310 |
| Defendant 12 | Kevin Kochka | Pennsylvania State Trooper | 2099 Lincoln Highway East | Lancaster | PA | 17062 |
| Defendant 13 | Thomas Nelling | Birmingham Township Police | 1040 West Street Road | West Chester | PA | 19382 |
| Defendant 14 | Joseph Elias | Caln Township Police | 253 Municipal Drive | Thorndale | PA | 19372 |
| Defendant 15 | Tracey Laws | Caln Township Police | 253 Municipal Drive | Thorndale | PA | 19372 |
| Defendant 16 | Mitchell Rock | Caln Township Police | 253 Municipal Drive | Thorndale | PA | 19372 |
| Defendant 17 | Thomas Goggin | Chester County Detectives | 201 West Market Street | West Chester | PA | 19380 |
| Defendant 18 | John O'Donnell | Chester County Detectives | 201 West Market Street | West Chester | PA | 19380 |
| Defendant 19 | David Sassa | Chester County Detectives | 201 West Market Street | West Chester | PA | 19380 |
| Defendant 20 | Robert Dougherty | Chester County Detectives | 201 West Market Street | West Chester | PA | 19380 |
| Defendant 21 | Debra Ryan | Chester County District Atttorney | 313 West Market Street | West Chester | PA | 19380 |
| Defendant 22 | Robert LaCourt | Cheyney University | 1837 University Circle | Cheyney | PA | 19319 |
| Defendant 23 | Richard Finfrock | Christiana Police | 10 West Solokon Ave | Christiana | PA | 17509 |
| Defendant 24 | Richard Finfrock | Christiana Police Department | 10 West Slokom Ave | Christiana | PA | 17509 |
| Defendant 25 | Frank Galbraith | Coatesville Area School District Police | 3030 C. G. Zinn Road | Thorndale | PA | 19372 |
| Defendant 26 | Mary Friedberg | Coatesville Area School District Police | 3030 C. G. Zinn Road | Thorndale | PA | 19372 |
| Defendant 27 | Dolores D'Amore | Coatesville Area School District Police | 3030 C. G. Zinn Road | Thorndale | PA | 19372 |
| Defendant 28 | Jack Laufer | Coatesville Police | 1 City Hall Place | Coatesville | PA | 19320 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Defendant 29 | Gerald Boomer | Coatesville VA Medical Center | 1400 Blackhorse Hill Road | Coatesville | PA | 19320 |
| Defendant 30 | Howard Holland | Downingtown Police | 10 W. Lancaster Ave | Downingtown | PA | 19335 |
| Defendant 31 | Georgene D'. Carbo | Downingtown Police | 10 W. Lancaster Ave | Downingtown | PA | 19335 |
| Defendant 32 | Lisa Taraschi | East Brandywine Police | 1214 Horseshoe Pike | Downingtown | PA | 19335 |
| Defendant 33 | William Mossman | East Coventry Police | 855 Ellis Woods Road | Pottstown | PA | 19465 |
| Defendant 34 | Robert Clarke | East Marlborough Township Police | 721 Unionville Road | Kennett Square | PA | 19348 |
| Defendant 35 | Michelle Major | East Pikeland Police | 1158 Rapps Dam Road | Kimberton | PA | 19442 |
| Defendant 36 | Joseph Heyman | East Pikeland Police | 1158 Rapps Dam Road | Phoenixville | PA | 19460 |
| Defendant 37 | Matt Williams | East Vincent Police | 262 Ridge Road | Spring City | PA | 19475 |
| Defendant 38 | Chris Yeager | East Whiteland Police | 209 Conestoga Road | Frazer | PA | 19355 |
| Defendant 39 | Joe Miles | East Whiteland Police | 209 Conestoga Road | Frazer | PA | 19355 |
| Defendant 40 | Dixie Strachnik | Easttown Police Department | 566 Beaumont Road | Devon | PA | 19333 |
| Defendant 41 | Calvin Wilson | Honey Brook Borough Police Department | 91 Pequea Avenue | Honey Brook | PA | 19344 |
| Defendant 42 | Benjamin Pratt | Kagel, Kelin, Litts & Lord | 24 North Lime Street | Lancaster | PA | 17602 |
| Defendant 43 | William Holdsworth | Kennett Square Borough | 120 Marshall Street | Kennett Square | PA | 19348 |
| Defendant 44 | Matthew Gordon | Kennett Square Borough | 120 Marshall Street | Kennett Square | PA | 19348 |
| Defendant 45 | Marc Partee | Lincoln University | International Cultural Center | Lincoln University | PA | 19352 |
| Defendant 46 | Louis Marcelli | Malvern Police | 1 East 1st Avenue #1 | Malvern | PA | 19355 |
| Defendant 47 | Louis Marcelli | Malvern Police | 1 East 1st Avenue #1 | Malvern | PA | 19355 |
| Defendant 48 | Matthew Delchert | North Coventry Police | 843 South Hanover Street | Pottstown | PA | 19465 |
| Defendant 49 | Ann Gery | North Coventry Police | 843 South Hanover Street | Pottstown | PA | 19465 |
| Defendant 50 | Samuel Iacono | Oxford Borough | 1 Octorara Alley | Oxford | PA | 19363 |
| Defendant 51 | Maria avala | Oxford Borough | 1 Octorara Alley | Oxford | PA | 19363 |
| Defendant 52 | Brian Sheller | Parkesburg Police | 315 West 1st Avenue | Parkesburg | PA | 19365 |
| Defendant 53 | Sharen Maittland | Pennsylvania Attorney Generals Office | | | | |
| Defendant 54 | Rachel Zeltman | Pennsylvania State Police | 1800 Elmerton Avenue | Harrisburg | PA | 17110 |
| Defendant 55 | Andrew Lovette | Pennsylvania State Police | 1800 Elmerton Avenue | Harrisburg | PA | 17110 |
| Defendant 56 | William Rozier | Pennsylvania State Police | 1800 Elmerton Avenue | Harrisburg | PA | 17110 |
| Defendant 57 | Melissa Laughlin | Pennsylvania State Police | 1800 Elmerton Avenue | Harrisburg | PA | 17110 |
| Defendant 58 | Erin Burlew | Pennsylvania State Police | 1800 Elmerton Avenue | Harrisburg | PA | 17110 |
| Defendant 59 | Sanjay Bridges | Pennsylvania State University Great Valley | 30 East Swededsford Road | Malvern | PA | 19355 |
| Defendant 60 | Brian Marshall | Phoenixville Police | 351 Bridge Street | Phoenixville | PA | 19460 |

| Defendant 61 | Danielle Wade | Phoenixville Police | 351 Bridge Street | Phoenixville | PA | 19460 |
|---|---|---|---|---|---|---|
| Defendant 62 | Michael Hawley | Sadsbury Township Police | 2920 Lincoln Highway | Sadsburyville | PA | 19369 |
| Defendant 63 | John Frye | Schuylkill Police | 111 Valley Park Road | Phoenixville | PA | 19460 |
| Defendant 64 | Kevin Pierce | South Coatesville Police | 134 Modena Road | Coatesville | PA | 19320 |
| Defendant 65 | Chief Simpson | Southern Chester County Police | 8934 Gap Newport Pike | Landenberg | PA | 19350 |
| Defendant 66 | Ryan White | Spring City Police | 6 South Church Street | Spring City | PA | 19475 |
| Defendant 67 | Timothy Brown | Tredyffrin Township Police | 1100 Duportail Road | Berwyn | PA | 19312 |
| Defendant 68 | Mike Beaty | Tredyffrin Township Police | 1100 Duportail Road | Berwyn | PA | 19312 |
| Defendant 69 | John DeMarco | Upper Uwchlan Township Police | 140 Pottstown Pike | Chester Springs | PA | 19425 |
| Defendant 70 | Scott Alexander | Uwchlan Township Police | 715 North Ship Road | Exton | PA | 19341 |
| Defendant 71 | Timothy Parker | Valley Township Police | 1145 West Lincoln Highway | Coatesville | PA | 19320 |
| Defendant 72 | Jeff Kimes | West Brandywine Police | 198 Lafayette Road | West Brandywine | PA | 19320 |
| Defendant 73 | Thomas Siedenbuehl | West Caln township | 721 West Kings Highway | Coatesville | PA | 19320 |
| Defendant 74 | James Morehead | West Chester Police | 401 East Gay St | West Chester | PA | 19380 |
| Defendant 75 | Raymond Stevenson | West Chester University Police | 700 South High Street | West Chester | PA | 19383 |
| Defendant 76 | Eric Hughes | West Fallowfield Police Department | 3095 Limestone Road | Cochranville | PA | 19330 |
| Defendant 77 | Michael Carroll | West Goshen Police Department | 1025 Paoli Pike | West Chester | PA | 19380 |
| Defendant 78 | Jessica Harper | West Goshen Police Department | 1025 Paoli Pike | West Chester | PA | 19380 |
| Defendant 79 | Shane Clark | West Pikeland Police | 1645 Art School Road | Chester Springs | PA | 19425 |
| Defendant 80 | Michael Swininger | West Vincent Township Police | 729 Saint Matthews Road | Chester Springs | PA | 19425 |
| Defendant 81 | Lee Benson | West Whiteland Police | 101 Commerce Drive | Exton | PA | 19341 |
| Defendant 82 | Jennifer Keller | West Whiteland Police | 101 Commerce Drive | Exton | PA | 19341 |
| Defendant 83 | Lee Benson | West Whiteland Police | 101 Commerce Drive | Exton | PA | 19341 |
| Defendant 84 | Yvette Johnson | West Whiteland Police | 101 Commerce Drive | Exton | PA | 19341 |
| Defendant 85 | Brenda M. Bernot | Westtown Police | 1041 Wilmington Pike | West Chester | PA | 19382 |
| Defendant 86 | Diane Moore | Willistown township police | 688 Sugartown Road | Malvern | PA | 19355 |
| Defendant 87 | Lisa Yelovich | Octorara School Board | 228 Highland Road | Atglen | PA | 19310 |

PREFACE:

Upon immediately opening this complaint, one thing should jump off the header page. One Plaintiff and a volume of Defendants. On the surface this must appear unusual, but the current state of the relationship culture between those representing authority and those requiring public services and obligated financially to contribute to public services has been historically shifted to where the prevailing expectation of public servants is the blind obedience. Disagreement, challenge, or evening questioning the statements of anyone perceived in any form of challenge results in retaliation, contempt and sometimes much worse, criminal actions under color of law.

The Plaintiff had zero intent of investing the hundreds of hours in documenting a complicated process, nor the thousands of hours of study and research. The Plaintiff's time investment was desired by private citizens to be represented to a larger community through practical, logical and reasonable discernment resulting in educational messaging through an alias called Cultural Contrarian. The Plaintiff provided a portion of public visibility of the Plaintiff's study, learning and process through public and private social media resources. His intentions and conduct are authentic and transparent and any narrative by public servants, absent of an objective record, benefit from being contrasted against the Plaintiff's publicly visible information and that accumulated in the Plaintiff's documented evidence.

Our founding fathers were proponents of a rigorous debate between private and public citizens. However, over generations, the United States Senate has legislated restraints against the people, the Supreme Court has made rulings which have approved a different set of standards for Public Servants and Private Citizens.

Public Servants have the unthrottled power to affect all sorts of harm, under the color of law. They are protected from any mis-statement, mis-representation, mis-characterization which may result in detainment, arrest and potentially death. Our law enforcement has no "duty to protect", and individuals who have been harmed by tragedy at the hands of public servants quickly learn about the "special relationship doctrine".

Most private citizens know if they lie, threaten, harass, or harm another person, their life might change.  They could be written up by an employer, lose their job, be arrested, even be put into a never ending financial legal battle in the courts.  Public servants live within a different set of rules. Law enforcement are not obligated to know the laws they enforce, and have countless protections from when they act under color of law. Very few citizens understand the legal and judicial and tax payer funded differences afforded to public servants which are burdens and expenses to private citizens.

Humanity is diverse and every individual has their own, personal criteria, which they assign trust to an individual, a private company, a publicly traded corporation, and yes government agencies. Trust is a personal balance of what a person is willing to consent, submit, or agree to commensurate with the benefit they desire, or reduce their risk of harm. As most private individuals, corporations, are not negotiating or contracting with the possibility of encountering threats, intimidation, coercion or violence and most don't open carry, free choice exists for all. However, when the power differential shifts where individuals encounter armed public servants, the risks are much greater and accountability requires tremendous courage which is predicated upon volumes of knowledge. The power differential is real and the collective intelligence of common citizens has been greatly reduced by a culture of Too Distracted to Read and be immersed in countless hours of 30 second video clips.

Many citizens have an innate understanding of right and wrong, and all humans avoid responsibility for when they do something wrong. However, all humans have a degree of seeking restoration or restitution when they have been wronged. The reality is that very few citizens have any concept of that effort.

As this complaint is a well-documented process over a number of months exposing the crimes of Deprivation of Rights under color of

law, it even reveals the depth of conspiratorial actions of public servants to avoid accountability and exposure of those crimes. Further, it was a publicly viewed demonstration of the Plaintiff standing free on his Constitutional Rights, which was characterized as contempt, defiant, and other invalid representations by the public servants, in addition to private citizens.

The Plaintiff perceived that during his effort to be free, and not have his rights deprived, a portion of citizens desired the same, to be free to redress their public officials. However, prior to the arrival of the Plaintiff, they were silenced, removed, discriminated and most of all exhausted, frustrated and afraid. The publics, public servants were not serving them and have validated that by their actions. As the Plaintiff began to advocate for the citizens, they experienced hope, that they could be heard. Unfortunately, they had never learned, studied or were taught what accountability looks like for public servants.

This complaint to arrive at Federal Court was never the Plaintiffs desire nor goal. But, in order to be free, one must be willing to learn the process, the obstacles and hurdles to stand free on the law and allow the law to prove it is either just or unjust. The Plaintiff is entrusting the court, a potential jury to review his

complaint to aid in educating private citizens on what level of effort is required if we truly desire accountability.

While only one Plaintiff is listed, the volume of harmed individuals is countless. Other harmed individuals lacked understanding of the process and countless hurdles and were legitimately afraid. These un-named individuals didn't know what standing free looked like. The experienced first-hand the retaliation, discrimination, bullying and calls to their employers by public servants, chastising their conduct at public meetings. These un-named individuals had children who were kidnapped out of their classroom, falsely imprisoned in secure, private, restricted areas. Public servants were quick to enforce unlawful mandates and be the sole interpreter for demanding medical interventions for minors. The singular point of review of exemption requests with overwhelming bias to determine a denial status. My Body, My Choice was a logical fallacy which was ignored, allegedly and the influence of significant funds fueling underfunded public institutions and pensions. The un-named citizens harm was real, but they could not unite for everyone is an individual with their own degree of trust, and risk to determine their interest, time investment and participation. Fear is tool which is used to advance how submission, surrender, and consent spreads. The Plaintiff exposed and validated the legitimacy behind an increased degree of

fear. Many witnessed his lawful actions in real-time, captured on video, shared on social media and narrated on podcasts.

This journey, regardless of outcome will be a rubric for We The People the opportunity to continue to be distracted, learn what Freedom looks like, is accountability a wish, hope, dream or is it a possible reality, or detach from fabricated illusion of one's personal degree of trust and just accept what comes before you and submit, surrender, consent and comply without regard to if it is righteous, truthful or even lawful.

It is beneficial to note, that the Plaintiff had repeatedly attempted to caution School Board Members and the School Solicitor that their actions are consistent to an existing complaint registered with the Federal Court in what has been called in the press the "MARSHALL v AMUSO". This is Douglas Marshall, Simon Camble, Robert Abrams and Timothy Daily v (named defendants). All communication regarding this notice was ignored and publicly stated at public School Board Meetings, under the advice of counsel we are clear.

As it is believed that all defendants will attempt to shield their personal responsibility and public visibility of their premeditated deprivation of rights under color of law through taxpayer funded qualified immunity, Plaintiff reminds the court

and Defendants of the several Supreme Court precedent limits of Qualified Immunity protections which should be denied.

*Mally v Briggs*, **475 U.S. 335** "A police officer or public official loses their qualified immunity when they knowingly violate the law or are plainly incompetent"

*Harlow v Fitzgerald*, **457 U.S. 800** "Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar their conduct does not violate clearly established statutory or Constitutional Rights of which a reasonable person would have known"

*United States v Gannt*, **194 F. 3d 987** "There is no good-faith exception to the exclusionary rule for police who do not act in accordance with governing law"

*United States v Lopez-Soto*, **205 F.3d 1101** "Police officers must properly understand the law that they are entrusted to enforce and obey"

*Ashcroft v Al-Kidd*, **U.S. 731** "Qualified immunity shields a government official from money damages unless...

1. The official violated a statutory or Constitutional Right, and...

2. That right was clearly established at the time of the challenged conduct"

*Owen v City of Independence*, **445 U.S. 622** "A municipality has no immunity from liability under U.S.C. 42 § 1983 flowing from its Constitutional violations, and may not assert the good faith of its officers as a defense to such liability"

## INTRODUCTION:

1.   The Octorara School District and Octorara School Board comprise individuals who are performing a public duty and service to the local community, along with a broader community of those who are obligated to pay taxes.   Any resident within the Commonwealth has a lawful and legal standing to petition and redress grievances to individuals and groups who are discharged to perform services at their mere pleasure to private citizens of the Commonwealth of Pennsylvania.

2.   Most citizens do not have an understanding of the process or expectations when interacting with public officials and the volume of legal hurdles a citizen must overcome if they desire transparency, accountability and compliance with law, statutes, policy or other state or federal regulations.   Many law-abiding citizens are exhausted, frustrated and overwhelmed by countless public servant's lacks of knowing the law, misrepresentation of statues, violation of laws, and their inability to reasonably

communicate with the community at large and other vested
individuals.

3.   It was never my desire to bring action before a Federal Court,
and the Plaintiff, along with the support of many others, attempted
to be reasonable, respectful, professional and most of all lawful
when attempting to interact with individuals who one would desire
or expect, to honor their oath to their sworn duties. However, we
do not live in reasonable times, and accountability and
transparency has amassed tremendous burdens, for We The People.

4.   This case is a direct example which will reveal a number of
obstacles, burdens, and present to the public, the effort to
achieve transparency and accountability desired by the plaintiff
and many other affected private citizens.  Educationally, We The
People will have an opportunity to learn what our burdens are, how
our elected officials responded to the plaintiff in his attempt to
be reasonable, and the evidence of the defendant's actions,
inaction, response and countless false statements.

5.   Plaintiff had personally received direct communication from
a number of concerned parents regarding the unlawful,
disrespectful, unprofessional and discriminatory actions
perpetrated within Octorara School District. Octorara School is
not an isolated incident as it is well established that many School
Districts in the Commonwealth have a similar dysfunction. This is

documented in this Court most recently in *Marshall v Amuso*. School Board officials were informed of this action when it commenced.

6.   As the supreme rule of the land is not our Constitution, but the precedent established by the Supreme Court. We The People have an overwhelming burden when interacting with those in public servants when seeking a goal of accountability, transparency along with complying to laws, statutes, policies, based upon the direction provided when discerning Supreme Court precedent.

7.   Few citizens understand the precedent established in *Graham v Connor, Frazier v Cupp, Murdock v Pennsylvania* and many other relevant decisions. These decisions establish the duty of citizens to respectfully and lawfully correct statements made by public servants.

8.   Acceptance of a misrepresentation of law, statue, code, is acquiescence or consent to the misrepresentation, unless corrected. We The People have an obligation to comply with laws and a duty to hold public officials to those same laws, to the United States Constitution and its Bill of Rights.

9.   The premise established in *Graham v Connor* is that it is not "reasonable" for public officials to know all the laws, statutes, policies which they must abide by or potentially enforce. Conversely, "ignorance of the law" for private citizens is not a legitimate defense.

10.  The reality is that the overwhelming majority of citizens have never been taught or been provided an avenue to learn how to achieve accountability of our public officials. The art of accountability is masked in obfuscation and a bureaucracy which is designed around plausible deniability to make it extremely difficult to confront or challenge authority when they violate their sworn duties.

11. What has been clearly demonstrated over time is that allegations that suggest Color of Law violations, by public servants are often directed to Qualified Immunity protected defenses. These are taxpayer funded expenses to defend against the allegations, and any potential settlement, in the favor of a Plaintiff will be compensated through taxpayer funded liability insurance policies or other taxpayer funded resources. Logically, and emotionally, it doesn't make sense that a victim of allegations that are deemed true to warrant a settlement, should not be paid by the victim(s) of the crime.

12.  The Qualified Immunity process is so secure, that even if a public servant is found guilty regarding allegations of dereliction of duty, denial of services or other potential actions, that the public servant doesn.t receive any reasonable admonishment, financial penalty, or career modifying impact.

Qualified Immunity, in the minds of public servants is a slap on the wrist, paid vacation.

13. The plaintiff desired to achieve accountability and transparency from a number of named defendants. However, that desire was met with reckless disregard of the law, their sworn duties, and was enhanced by a broader conspiracy against the plaintiff.

15. The exhaustive energy by the plaintiff, to encourage defendants to honor their oath, while his rights were converted into a crime, continue to this day. The response remains the same. Ignore, malign, defame, and fabricate false narrative on a public record.

16. The plaintiff continues to afford the public servants the ability to correct their reckless disregard for the law. The only remedy remains is to issue a Federal Complaint to ensure public servants, who are acting under Color of Law, are held responsible personally for their crimes.

17. It is not reasonable nor logical, that taxpayers, should be financially responsible for the criminal actions of public servants. Qualified immunity is reserved for "reasonable" public servants who are honoring their sworn oath and duties. When a public servant refuses to be reasonable, ignores a multitude of

warnings and corrections to the law, they have surrendered their Qualified Immunity.

18. Surrender of Qualified Immunity is confirmed with the public servants ignore the Constitution, they have been appropriately modified according the law, afforded the opportunity to correct their errors. Absent of being "reasonable", to review, research or verify documented correction, and their actions persist, it is logical for an individual to deduce the public servant as being "unreasonable". 19. An "unreasonable" public official would not be acting in their official capacity, ignoring such correction. Their actions would not only reflect, not acting in their public servant capacity, but acting in their private person capacity, or under "color of law".

20. This complaint is well supported, with volumes of evidence, that countless public servants have a reckless disregard for the limits of their authority, reckless regard for the law, and have chosen, in their private capacity to perpetrate a number of civil rights deprivations.

21. The countless attempts to "reason" with public officials have been ignored, converted into slander, libel, false characterizations, unlawful conversion of constitutionally protected rights into a crime and a host of conspiracies.

22. Attempts to address these issues outside of the court have been rebuked, ignored and have resulted in a variety of false statements regarding intention and character of the plaintiff.

23. The list of defendants is quite extensive, and not all defendants are equally involved in civil rights deprivations. 24.

However, they are all united in their participation in a broad conspiracy against the plaintiff.

25. The Plaintiffs only remedy is to seek review of Plaintiff's complaint, before a jury, for the jury to determine the breadth and depth of the conspiracy to criminalize a private citizen, when engaging our public educational system.

26. It was mentioned that this case is not unique, in that the plaintiff could easily reconstruct an almost identical path with any public education district within the Commonwealth of Pennsylvania.

27. It is also noted that the evidence in this case and actions of public servants is not unique to the Commonwealth of Pennsylvania.

28. Documents, Statements and Actions perpetrated by the Federal Government against private citizens in a fallacious characterization of citizens attempting to be free law-abiding citizens, characterized as domestic terrorists is well documented.

Our government even attempted to bring this into public visibility through hearings, which the truth is never revealed.

29.  Most visible are actions in a Norther Virginia School District where a parent's child was a victim of a rape on school property. A parent advocating for the safety of a child, quickly got converted into a narrative and action of shield, obfuscate and avoidance.

30.  The issues in the Plaintiffs case are potentially procedural in nature, lack of training of public servants and systemic across the public education landscape.

31.  It is not the Plaintiffs desire at all to travel, advocate and expose the reckless disregard of the law across the Commonwealth and this case could be a catalyst to facilitate a reasonable discussion to change the nature, responsibility, accountability and transparency of public servants to those whom they serve.

32.  Alternatively, the court may require more Plaintiffs or actions to be brought before the court to determine the validity of such allegations.

33.  The legal system does have a process to verify these allegations, prior to more Plaintiffs coming before the Court. The Plaintiff attempted to engage the County District Attorney to

investigate multiple school districts who allegedly violate citizens' rights through the enforcement of School Board Policy 903.

34.  This request was to convene a grand jury to hear and review testimony from injured parties, to determine if an investigation was warranted.  This request was ignored and subsequently denied as the District Attorney has the authority to convene a Grand Jury and the issues presented to the DA were re-directed to Chester County Detectives.

35.  To validate the intentionality of the Plaintiff's desires, with the objective of having reasonable discourse and interaction with public servants, education has always been a critical component.

36.  The United States Constitution has provided a Bill of Rights which many citizens have been conditioned to surrender based upon fear from those representing authority.

37. The plaintiff doesn't wish to debate the veracity or legitimacy around citizen fear. However, the nature of this case, the Plaintiff desires to stand firm on all his constitutional rights and reserve them. This would be inclusive of the right under the First Amendment which incorporates Free Press.

38.   The Plaintiff wishes to retain his right, to record publicly the proceedings of all public officials and defendants, during the proceeding, to disseminate the process to countless interested parties.

30.   It is unusual that a citizen must document or audibly make a statement regarding their desire to exercise a constitutional right. But as this case stems from a Deprivation of Rights, it is perceived incumbent by the Plaintiff, to document the request to stand on all of his Constitutional rights.

31. As the defendant is respectful of the Court, this request will be waived and the Plaintiff will not exercise Plaintiff's Second Amendment Right and would request the Courts indulgence, that in respect to the Plaintiff, that the Second Amendment right is chilled for all individuals who would be present during any proceeding with the Plaintiff.

32.   It is the Plaintiff's desire to be respectful of authority, and at the same time to be on equal footing as a demonstration of mutual respect and equal enforcement. If special privileges are extended to Public Servants, Plaintiff will be requesting the names, serial numbers of all those being granted privilege to validate they have lawful authority.

**II VENUE AND JURISDICTION**

33. This Court has jurisdiction over this action, as Plaintiff presents a federal question as Plaintiff seeks a redress, against claims, for deprivations of rights protected under the United States Constitution, the Constitution of the Commonwealth of Pennsylvania, 42 U.S.C. §§ 1983 *et seq*., and 18 U.S.C. §§ 241, and 18 U.S.C. §§ 242, and 28 U.S.C. §§ 1331, and 28 U.S.C. §§ 1343(a)(3), (4).

34. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear Plaintiffs' claims under the Pennsylvania Sunshine Act, 65 Pa. C.S. §§ 701-716 and Pennsylvania Education code, in

that these claims form part of the same case or controversy as the federal claims.

35. The Court has personal jurisdiction over the defendants because they are residents of the Commonwealth of Pennsylvania and the events from which the action arises occurred within this district.

36. Plaintiff claims for declaratory injunctive relief are brought pursuant to 28 U.S.C. §§ 2201-2202, by Federal Rules of Civil Procedure 57 and 65m and the general legal and equitable powers of this court.

## III CONDITIONS PRECEDENT

37. All conditions precedent to this action have occurred.

## IV FACTUAL ALLEGATIONS

38. Plaintiff, John Ryan Miller, had been engaged by several parents of students enrolled in Octorara School District in Atglen, Pennsylvania. The engagement was related to parental concerns, regarding actions/consequences, resulting from policy enforcement, mandates, guidelines and other harms which children were

experiencing within Octorara School District through their administration and actions through elected School Board members.

39. The Plaintiff had expressed concern to the parents that attempting to advocate on behalf of their children, with the school board and administration was a dangerous proposition and that the US Attorney General had presented to congress a document that indicated they the Government was keeping an eye on parents with scrutiny as possible domestic terrorists.

40. The Plaintiff's clients provided him evidence of discrimination, social isolation, false imprisonment, kidnapping, theft of personal property, and a documented history of punishing children under the guise of "defiance of authority".

41. Plaintiff's clients also provided evidence of School Board officials asserting authority, making threats, outside of their sworn duties and lawful authority.

42. Plaintiff accumulated documents, video evidence, and witnessed, reviewed and through interview, statements and evidence, of countless Deprivation of Rights along with violations of the Commonwealth of Pennsylvania Sunshine Act.

43. The Plaintiff established a contractual relationship on behalf of concerned citizens, to advocate on their behalf to isolate the parents from possible direct retaliation and the

potential negative impacts, affecting their own children within the school, and themselves.

44. The Plaintiff informed his clients that advocacy requires a deep understanding of the law, the constitutional bill of rights and the limits of authority of public servants. In addition, the significant burdens of private citizens if they seek transparency and accountability.

45. The Plaintiff understood that ignorance of the law is not a defense against the law. Further, the Plaintiff understood the Supreme Court ruling of *Graham v Connor*, that it is not "reasonable" for public servants to know all the laws they are to follow, nor the limits of their ability to enforce laws or policy on private citizens.

46. It was not the Plaintiffs expectation to encounter a reckless disregard for the law, but to be prepared in the event public servants took such a position.

47. It was never the Plaintiff's desire, and this well documented through Plaintiff evidence, to bring this complaint before the Federal District Court.

48. The Plaintiff exhaustively attempted to reason with public servants who have provided evidence for their reckless disregard

of the law, in addition to the abandonment of their oath commensurate with their position.

49. The interactions with the majority of the defendants demonstrated reckless disregard for the law, and appeared to function with impunity under the belief that they would have legal protection via qualified immunity to protect their actions.

50. The Plaintiff has sufficiently documented that the public servants were warned, that violating their oath, under color of law, does not grant qualified immunity protection for the defendants. The defendants were informed that they were functioning as "actors", in their "private person capacity", and surrendered their legal, qualified immunity, and tax payer funded defense to their Color of Law actions.

51. The Plaintiff recognized that private citizens are obligated to inform public servants when they make mis-statements, misrepresentations, mischaracterizations and possibly improper enforcement.

52. When informing the public servants, the Plaintiff specifically referenced Supreme Court precedent, along with US Codes which were being violated, verbally on the record and countless times on a written record.

53.  The Plaintiff, in advance of attending any school board meeting, had anticipated that the School Board would attempt to enforce their Policy 903, to silence the Plaintiffs 1st amendment right.

54.  Plaintiff sent out advanced notification to a list of public servants with oversight and lawful authority to ensure citizen's rights are protected and defended in the capacity of a School Board member.

55.  The information provided was clear o the objective (to lawfully speak before the school board at the appropriate time, place and in a lawful manner).

56.  The initial communication sent from the Plaintiff was in an effort to prepare the school board, local law enforcement and other involved parties, to the limits of their authority and to honor their oath to defend, protect and uphold the constitutional rights of private citizens.

57.  It is not reasonable to expect a public servant to acknowledge, open, review, comment or forward communication from a private citizen.

58.  A private citizen must anticipate being ignored and explore multiple means to attempt to be recognized (email, phone calls, direct communication, etc.).

59.  It is also not reasonable to trust that if a public servant would receive communication, that a record of their actions would be documented or provided as a confirmation through a Right To Know Law request, regardless of their duties requiring such documentation.

60.  The Plaintiff repeatedly attempted to reason with defendants and their avoidance is documented in plaintiffs exhibits. The Plaintiff chose to seek remedy from all defendants in their private person capacity, as they have acted with forethought and malice to criminalize the actions of the plaintiff in direct violation of their sworn oath.

61.  The Plaintiff began advocating for his clients back in October of 2021, with an advance notice sent to the Octorara School District Board, with Plaintiffs desire and expectation, to be a free law-abiding citizen, to speak before the board at the appropriate time, place and manner for 3 minutes.

62.  Prior to attending the meeting, Plaintiff gathered his own evidence available in public view, and documented the many instances of the Octorara School Board and Board President depriving citizens their constitutionally protected rights under the 1st amendment to redress grievances.

63.  Other violations were witnessed, in that the board was enforcing policy requiring citizens to surrender their 4th amendment right in order to exercise their 1st amendment.

64.  School Board officials and Superintendent do not have the lawful authority to remove a private citizen from a public meeting absent evidence of a crime, a crime in progress, or a crime about to occur.

65.  School Board officials, school employees do not have enforcement authority via policy, to deprive any citizen of any right. Law enforcement do not have authority to enforce policy, they enforce "Law".

65.  School Board officials rely upon Law Enforcement to follow their requests and agree with their narrative, if the request the assistance of Law enforcement to enforce their policy.

66. Law enforcement has a duty to investigate the allegations, obtains sworn affidavits and to lawfully discharge their duties. This includes to ensure they document the elements of Probable Cause, to verify a crime has been committed, a crime was in progress, or a crime was about to occur.

67. Absent of law enforcement obtaining affidavits, that support Probable Cause, allegations are subject to officer or school board narrative, absent of evidence or affirmation.

68.   Plaintiff   knows   of   these   duties,   responsibilities,   and
policies   within   Law   Enforcement,   and   desires   to   remain   free,
without a duty to correct or potentially challenge authority when
confronted unlawfully.

69.   Plaintiff also knew and communicated in advance that it is
unlawful to remove an individual from public property absent of
the elements to support probable cause of criminal activity.

70.   Plaintiff also knew that an officer "asking" a citizen to
leave is merely a request. A request does not require a citizen to
comply.  Plaintiff   presented   to   all   school   board   members   and   law
enforcement, how the Plaintiff would conduct himself if presented
in such a circumstance.

71.   Plaintiff   also   provided   advanced   notice   along   with   a   public
podcast which detailed how the Plaintiff would conduct himself in
advance   of   a   possible   encounter.   Plaintiff   has   a   history   of
personally   documenting   and   recording   encounters   with   public
officials.   This   objective   recording   is   evidence   that   can   be
reviewed   in   comparison   to   public   servant   narratives   or   public
statement.

72.   On January 24th, 2022, Plaintiff visited Octorara School
District,   and   sat   in   the   audience.   During   the   appropriate   time,
place and manner for citizen comments, Plaintiff sat and listened
to   parents   present   their   concerns   to   the   board   covering   a   wide

range of issues from masking mandates, virtual learning, social isolation, along with a variety of concerns of parents whose children have IEP's.

73. When there was a lull in the public comments, Plaintiff approached the public microphone, with a prepared document to read before the board.

74. As the Plaintiff approached, the School Board President (defendant Brian Fox) asked the Plaintiff to provide his name and municipality in accordance with their policy "903".

75. Plaintiff informed the board president, that policy is for employees and that citizens are to comply with laws and are protected under the Constitution to remain secure in their Fourth amendment and have no duty nor obligation to provide the requested information.

76. Board President and Plaintiff exchanged in back-and-forth discussion (which is on the public record). The Board President was not interested in hearing the law, and established conditions if the Plaintiff desired to speak.

77. Plaintiff stated that under Duress, he would provide his name, as an unlawful condition to exercise his right to speak. The School Board President further stated that Plaintiff must provide his

municipality, to ensure the citizen has "standing" to speak in this limited public forum.

78. The Plaintiff stated that he is a resident/taxpayer of the Commonwealth of Pennsylvania, a resident within Chester County and is a taxpayer whose funds provide him standing.

79. Even though standing is not a lawful obligation requiring validation to exercise one's free speech. Eventually the Plaintiff stated a municipality, within the jurisdiction of the Octorara School district, which Plaintiff has standing and conducts business.

80. Plaintiff deviated from his written words, to redress the board in their collective violation of their sworn duties and oath to the constitution, (no board member verbally protected the constitutional rights of the Plaintiff) and informed the dais, that they were all acting outside of their qualified immunity protection and unlawfully depriving plaintiff and other citizens their constitutionally protected rights.

81. Plaintiff returned to his seat. Listened to some more of the board meeting and witnessed some horrible actions which continued to violate citizens' rights and perpetrate discriminatory policy and punishment against students and parent/guardian(s).

82. Plaintiff had hoped, that with the advanced communication beginning back in October of 2021, that the board would have conducted themselves lawfully. However, Plaintiff understood *Graham v Connor*, that it is not "reasonable" for public servants to know the laws which they should follow or their limits of authority granted by law.

83. Plaintiff had prepared a Color of Law Violation notice in advance, in the event the board acted outside of their sworn duties.

84. This notice enumerated 18 USC 241, 18 USC 242, and 42 USC 1983, violations perpetrated by the board and a request to cease violating citizens' rights. This document named all board members in their private person capacity.

85. This notice also referenced legal remedies available to the Plaintiff if they chose to ignore or investigate the Color or Law violation warning.

86. Plaintiff during the second public comment period, Plaintiff approached the board and hand delivered the violation notice to the board with his signature as the Plaintiff and board members named as Defendants.

87. It is alleged by Defendant Brian Fox, that the Color of Law violation notice was presented to the School Solicitor for their review.

88. The solicitor has no legal or ethical standing to use taxpayer funds, to provide legal advice on personal, private legal matters of private citizens, acting outside of their sworn duties or authority.

89. The Color of Law violation was presented to all board members in their private person capacity, "acting" as board members unlawfully.

90. The School Public Record,[Time Stamps: (attempt to speak 14:25-19:04) demonstrates they clearly deprived the Plaintiff of their ability to stand on the Plaintiffs Fourth Amendment and freely exercise his First Amendment.

91. Plaintiff hand delivered to the School Board the Color of Law violation and the School Board failed in their duty to appropriately inform the public of the alleged infraction in the public record meeting notes.

92. The school board, demonstrated reckless disregard for the law, clear documentation to inform the public of the received notice. The Plaintiffs deprivation of rights is a matter of public record, of a clearly established protected right.

93.   This was a cognitive decision by the board as several notices were provided well in advance of 1/24/2022 in addition to verbally (on the record) when Plaintiff attempted to speak.

94.   Private legal matters require seeking private legal advice and not utilizing tax payer funded counsel through the solicitor who is to advise only on school board issues, not personal civil allegations or possible litigation.

95. The Plaintiff submitted public records requests, which the responses, did not confirm the allegation of the solicitor reviewing or providing a written response to the Color of Law violation notice.

96.   However, Defendant Brian Fox alleged that the Solicitor had been presented the document and that the Solicitor stated that the board had the authority to enforce Policy 903 as written and silence the speech of citizens.

97.   Attempts to identify the expenses submitted to the school board for consultation on school board members private legal matters were ignored.

98.   Subsequent to the 1/24/2022 board meeting, Plaintiff obtained a host of public records documents, sent additional notices of warning, attempting to reason and correct the mis-statements and mis-representations regarding policy and constitutional rights.

99.   Due  to  the  unlawful  acts  perpetrated  by  the  board  members,
Plaintiff  sent  communication  to  the  Chester  County  District
Attorney.

100. The District Attorney forwarded the communications to Chester
County Detectives Unit which were allegedly directed to open up a
case related to Plaintiff's concerns.

101. A  series  of  communications  took  place  with  Defendant
Detective O'Donnell, where Plaintiff provided sufficient context
to the violations and potential continued deprivation of rights.

102. This communication also included a series of hyperlinks which
provided a resource to inform law enforcement, the preparedness of
the defendant, to ensure others do not attempt to deprive Plaintiff
of his rights.

103. The   resource   information   provided   to   law   enforcement,
provided role-play scenarios, which created a base of expectations
and how the Plaintiff would conduct himself if/when Plaintiff could
encounter law enforcement.

104. The Plaintiff also provided the path the Plaintiff would take
to seek redress/remedy if Plaintiffs rights were violated further.

105. For the purpose of the Court, this advanced notice included
Free Access to an eBook, produced by the Plaintiff. This eBook has

been widely shared within Chester County and other Counties across the country.

106. A link to the eBook was sent to the Chester County Detectives, District Attorney's office, in addition the Detectives shared this information with the Octorara School Superintendent, and subsequently was shared with School Board members.

107. The Plaintiff also memorialized via a time stamped podcast his intentions, and actions if Plaintiff were to encounter public servants who might violate their oath to their position.

108. This communication was broad in nature to address school board officials and potential law enforcement.

109. Soon after, Chester County Detectives sent out notification to every Chief of Police, Security personnel at local universities and Pennsylvania State Troopers with the implication that the Plaintiff's exercise of his constitutional rights is suspicious and allegedly suggest criminal behavior in nature.

110. Out of sequence, but the statement that the Plaintiffs statements and actions is on the record through the Chester County Detectives stating to Local Police Chiefs, that communications regarding plaintiff are restricted due to "open criminal investigation."

111. Plaintiff attempted to obtain records of this communication from all of the named individuals in the; be on the lookout notice, email blast by Chester County Detectives and the responses ranged from "no record exists", denied access due to an open investigation or simply ignored.

112. Multiple Defendants attempted to collaborate, conspire and fabricate a narrative of converting constitutionally protected rights into criminal actions.

113. Additionally, the Defendants attempted to create a negative or hostile intention which is entirely absent of any evidence or fact pattern. Plaintiff has overwhelming evidence through written communication, time stamped broadcasts, and video to present an objective reality which cannot be replaced by fabricated narrative with no factual evidence.

114. Plaintiff continued to send additional notices to the school board and public servants in law enforcement authority, in anticipation of the school board attempting to convert the exercise of a right into a crime.

115. Plaintiff additionally communicated to his clients and a broader network of concerned citizens, to clearly articulate the Plaintiff's intentions, actions and announce his response.

116. The Plaintiff presupposed that public servants would further attempt to deprive his rights, even after reasonable notices and warnings.

117. The Plaintiff hoped that his attempt to lawfully be free standing on his Fourth Amendment right to freely exercise his First Amendment of free speech. Avoiding the dangerous situation of correcting an officer's false representation of the law, and Plaintiffs actions being converted into a crime.

118. Octorara School Board had a scheduled board meeting on 2/14/2022. It is alleged that Chester County Detectives notified Octorara School Board of the intention of the Plaintiff to attend the regularly scheduled school board meeting.

119. Requests to provide written or record communication between Chester County Detectives, local law enforcement, Pennsylvania State Troopers, School Board officials, through the RTKL process produced no documents.

120. Plaintiff arrived at Octorara School on 2/14/2022 just before the regularly scheduled school board meeting.

121. In advance of the meeting Plaintiff parked in public parking spot, and noticed State Troopers parked in the parking lot as well. Plaintiff sat in the parking lot for a brief period of time, and

communicated via his cell phone and had witnessed police coming to their vehicles and returning into the building.

122. Plaintiff decided to relocate and park his vehicle at an adjacent parking lot, and approach the school for the meeting.

123. Plaintiff activated his smartphone to live video recording and proceeded to the school to identify the appropriate entrance to the School Board Meeting.

123. The Supreme Court and appellate courts have continued to rule, that it is firmly  established that ; no expectation of privacy exists for anyone when in public.

124. When approaching the school, Plaintiff encountered School Principal, John Propper. A consensual conversation took place where John Propper inquired if he could assist the Plaintiff.

125. The Plaintiff inquired to locate the proper entrance to attend the scheduled school board meeting. John Propper had informed the Plaintiff that the school board meeting had been canceled.

126. The Plaintiff inquired as to the reason and commented that it didn't appear to be weather related (noting that no snow was on the ground).  John Propper provided no information as to the reasoning for the meeting cancellation.

127. Plaintiff had documentary evidence in advance of going to the school, that the school administrators, school board president in

cooperation with local police and county detectives were conspiring to potentially criminalize the actions of the Plaintiff attempting to speak at the board.

128. This subsequently was revealed (through public records requests) in written communication that the meeting was canceled due to the Plaintiff wanting to speak at the board meeting.

129. It is unknown if the decision to close the school was a suggestion by the Chester County Detectives, or by the Superintendent or the School Board.

130. The Plaintiff, after concluding conversation with the principal, returned to Plaintiffs vehicle. and departed the school parking lot.

131. Plaintiff was immediately followed by a State Trooper for approximately 1 mile.

132. Plaintiff activated his turn signal, well in advance of an intersecting road to alert of upcoming turn, in an attempt to remain free from an unlawful traffic stop.

133. State Trooper Kochka, activated his emergency lights.

134. Plaintiff immediately pulled to the side of the road, activated vehicle hazard lights, put the vehicle transmission (automatic transmission) in neutral and activated the emergency break.

135. Plaintiff's hands were placed on the steering wheel and the window remained closed.

136. State Trooper Kevin Kochka approached Plaintiff and asked for Plaintiffs Drivers Licenses, registration and proof of insurance.

137. Plaintiff inquired of Trooper Kochka what traffic violation was he being arrested for.  The Supreme Court has determined that a traffic stop is a momentary arrest of a private citizens movement. Officers attempt to narrate an arrest, as defined by the Supreme Court, as a "detainment". If a citizen is not able to move, and dominion over a person is establish, their movement has been stopped or arrested.

138. Trooper Kochka stated Plaintiff had not committed a traffic violation, but was "detained" for investigative purposes related to a suspicious vehicle.

139. Plaintiff clarified by asking if a suspicious vehicle was a misdemeanor or a felony.

140. Trooper Kochka stated that he was conducting an investigative detention and demanded I exit his vehicle.

141. Plaintiff in fear of his person and property being hurt or damaged, made hand movements to ensure his vehicle was secure. He additionally manipulated his cell phone and placed his phone in

his shirt pocket. Plaintiff, when exiting the vehicle locked the doors and placed his vehicle keys into his pocket.

142. Upon exiting the vehicle, the Plaintiff asked if he was being detained or free to go. Trooper Kochka confirmed that Plaintiff was not free to go and under an investigative detention.

143. Plaintiff informed Trooper Kochka that this was an unlawful detainment and a deprivation of his civil rights under color of law.

144. At no time was the Plaintiff read his Miranda rights during this investigative detention. The encounter was not consensual as Trooper Kochka used his authority, to arrest the Plaintiff.

145. Plaintiff obtained confirmation from Trooper Kochka that the emergency lights were still active and that Trooper Kochka should speak to a supervisor or the district attorney to ensure he follows the law and not continue to violate the plaintiff's rights under color of law in violation of 18 USC 241, 18 USC 242, and 42 USC 1983.

146. Trooper Kochka chose to ignore the warnings by the plaintiff and continued a non-consensual interrogation.

147. Plaintiff stated that he is under no obligation to assist in the investigation and it is not reasonable to respect an unlawful detainment and false imprisonment.

148. As multiple officers arrived on the scene, it was obvious to any reasonable person that Plaintiff was not free to leave and any attempt to leave would result in violence by officers.

149. Violence would have been officers seizing dominion over the plaintiff, applying pain compliance, torture devices of slavery, and possible other abuses.

150. Trooper Kochka stated that failure to produce a driver's license, that Trooper Kochka could take Plaintiff to the station to be identified.

151. Plaintiff stated that Trooper Kochka could certainly violate his rights further by kidnapping him, seize his vehicle and take him into booking to identify with no articulable evidence of criminal activity.

152. Plaintiff stated to Trooper Kochka that he has a limited time for his unlawful acts, and if he chose to violate the plaintiff rights, he would be doing so in his private person capacity and pierce his qualified immunity protection and be personally liable under 18 USC 241, 18 USC 242 and 42 USC 1983.

153. The fellow officers who were on the scene who failed to identify. After approximately 25 minutes the Plaintiff was free to go. It is alleged that the local police at this encounter were out of their jurisdiction.

154. It was learned during that encounter, that Trooper Kochka traced the License Plate to identify the owner of the vehicle and assumed the owner of the vehicle and the plaintiff were the same individual.

155. Plaintiff provided no documentation to Trooper Kochka to verify or invalidate his assumption.

156. Plaintiff attempted to obtain information through the Right to Know Law regarding this traffic stop. The responding agency claims to have no records, incident report, email communication, text communication or phone recordings related to this unlawful detention and false imprisonment.

157. As Plaintiff is in possession of a variety of records commensurate to the incident, Plaintiff filed an appeal through the Right to Know process.

158. The response provided, included a number of false statements which are contradicted by Plaintiffs evidence.

159. Octorara School Board had a subsequent school board meeting scheduled for 2/21/2022.

160. The Plaintiff was prepared to speak to the school board and had a written document in which to read to the board. The Plaintiff had been predicting a negative response from Pennsylvania State Troopers and the Octorara School Board.

161. The Plaintiff again, provided a time stamped narrative of his intentions and planned response to the possibility unlawful behavior and or actions by public servants.

162. Preparation included for the possible unlawful aggression and potential unlawful arrest. Plaintiff chose to not bring his vehicle to this meeting and chose to arrive on foot. This way, in the event of an unlawful arrest, the Plaintiff wouldn't have to deal with additional unlawful actions related to a vehicle left on the property.

163. Plaintiff arrived at Octorara School and proceeded unimpeded to the general-purpose meeting area for the School Board Meeting. The Plaintiff took a seat and patiently waited for the appropriate time for public comment.

164. Plaintiff experienced the same behavior from School Board President as he continued to enforce policy 903 requirements upon the Plaintiff.

165. The Board President refused to permit the Plaintiff to speak for 3 minutes without demanding Plaintiff state Plaintiffs name and municipality.

166. As the Plaintiff was growing tired of the unlawful statements by the School Board President, Plaintiff was ending his attempt to be free and stood up to exit.

167. As the Plaintiff stood, he publicly stated he was going to call the police and request the police to affect a private person arrest of the board members.

168. As Plaintiff was in the process of standing and about to move towards the exit State Trooper Kochka and another Trooper entered the school board meeting.

169. Plaintiff immediately acknowledged the Trooper and stated "officer's please place the board under citizen's arrest for deprivation of rights under color of law".

169. Trooper Kochka publicly addressed Plaintiff by his Christian name, and made a false statement on the record that the Plaintiff was asked to leave.

170. Trooper Kochka ignored the statements or request of the plaintiff to investigate or affect a private persona arrest.

171. Trooper Kochka arrived a specific time, which a reasonable person would deduce that Trooper Kochka was notified to come in at the specific moment the Plaintiff was attempting to be lawfully free.

172. Trooper Kochka was acting outside of his authority, and was operating under the instruction, leadership, direction of the School Board.

173. Trooper Kochka did not "witness" anything, and was acting based upon some form of communication which is not a matter of public record.

174. Trooper Kochka was operating in his private person capacity and was derelict in his duties, had a reckless disregard for the law, and made false statements at initial point of contact with Plaintiff.

175. Trooper Kochka, and the additional unidentified trooper approached the Plaintiff and made a false statement that the School Board President had asked Plaintiff to leave.

176. Plaintiff new, and has a record that no such statement was made.  Regardless of a request to leave, a citizen is not obligated to leave and is free to remain on public property.

177. Plaintiff inquired of Trooper Kochka, what would happen if the Plaintiff chose to not leave.

178. Trooper Kochka stated that the plaintiff would be arrested and charged with defiant trespass after warning.

179. Plaintiff knew that this was an unlawful threat, for the law requires evidence of a crime, a crime in progress, or a crime about to occur for a private citizen to be lawfully removed from public property.

180. Plaintiff repeatedly inquired of Trooper Kochka, what crime had been committed, to be asked to leave public property.

181. Trooper Kochka was mis-informed and mis-represented the trespassing requirements from public property and was adequately informed, corrected and presented the risk of his qualified immunity protection again by the Plaintiff.

182. Trooper Kochka attempted to present a document, with the state statute regarding trespass law highlighted. Trooper Kochka suspiciously only highlighted the portion of Criminal Trespass after warning.

183. Trooper Kochka was either mis-informed, mis-directed, or negligent in his understanding of trespassing law from public property.

184. If Trooper Kochka new the law, and he was given orders to proceed in the manner he did, he is personally responsible for his conduct in following unlawful orders. Alternatively, if he knew the order was unlawful, he would have registered his objection to the order, but will follow the order based upon objection on the record.

185. It is reasonable knowledge that public property or property open for public accommodation, a citizen can only be "trespassed"

if they have committed a crime, a crime is in progress or a crime is about to occur.

186. Statements made by plaintiff to verify the nature of the crime to be substantiate a lawful request to leave was met with what is commonly referred to in certain communities as "copsplaining".

187. Plaintiff knows all citizens have an implied license to gain access to public property and property open to public accommodation. The only areas a private person is restricted is when sufficient security measures or signage is posted for a reasonable person to know it is restricted.

188. The Octorara School Board meeting is a limited public forum, where taxpayers are able to speak at the appropriate time, appropriate place and the appropriate manner in a public building on public property.

189. Trooper Kochka stated that Plaintiff is no longer able to go onto Octorara School Property and would be arrested if he returned.

190. Plaintiff received no documentation on the scene or in the mail, of a criminal trespass warning from public property.

191. Plaintiff communicated with Trooper Kochka on several occasions to obtain documentation, report, probable cause affidavit, sworn affidavit of reporting party.

192. Trooper Kochka, along with a response through Pennsylvania State Police, and a subsequent appeal process, had stated that no documents exist regarding a criminal trespass warning at Octorara School against the Plaintiff. Further, the appeal stated that no criminal investigation took place or exists.

193. A number of Defendants conspired to criminalize constitutionally protected rights, perpetrated a false criminal trespass with no documentation, no due process and no path to appeal.

194. Plaintiff received a document from School Superintendent, Michele Orner on 3/23/2022. This document stated that Plaintiff is "not permitted on any property operated by Octorara Area School District. This action is taken as a result of the disruption you caused at a school board meeting on Monday, March 21,2022".

195. The document presented to Plaintiff is an unenforceable request that the School Board and Superintendent had delegated the enforcement of such a statement to State Troopers.

196. School Superintendent, Michelle Orner intestinally, premeditatedly and maliciously, converted a constitutionally protected right into a criminal act in direct violation of *Murdock v Pennsylvania*.

197. The absence of a lawful document (criminal trespass warning, probable cause affidavit, sworn affidavit of the alleged crime, resulting in a verbal, and noted in email, a "criminal trespass warning", Plaintiff was denied due process to appeal such false allegation with no evidence.

198. The allegation was punitive and meritless, completely absent of sworn affidavit. Further, the investigating officer (indeed in a precarious situation of supporting another public servant) exacerbated the problem in not documenting the incident.

199. The Defendants, conspired to deprive Plaintiff of his rights through Threats, Intimidation, Coercion and Duress. No documents exist which afforded Plaintiff Due Process to appeal the allegations of fraudulent criminal trespass.

200. All attempts to reason with the School Board, Superintendent, Trooper Kochka have been ignored.

201. A reasonable person would conclude that returning to a subsequent, Octorara School meeting, would jeopardize the safety and life of the plaintiff with additional criminal and unlawful deprivation of rights and reckless disregard for the law or constitution.

202. The Plaintiff has a well-documented evidence chain of attempting to be reasonable with all connected public servants.

However, the list of defendants who have participated in a broad conspiracy to silence the plaintiff and convert his actions into a criminal act continues to demonstrate a reckless disregard for the law and constitutionally protected rights.

203. Plaintiff with the knowledge, via Right to Know Law requests, has confirmed via the State Troopers, that no crime of trespassing on public property against the Plaintiff is on the record.

204. However, Plaintiff realizes that it is not reasonable that Public Servants will act reasonably, when they have proven to act in reckless disregard of the law, and continue to harm private citizens.

205. Plaintiff desires to be free and may attempt to return to the school to speak before the school board.

206. The Plaintiff has provided advanced notice to all defendants, of the Plaintiffs intentions, actions and preparedness for an encounter.

207. The Plaintiff also has created a time stamped audio broadcast as evidence of his actions and response.

208. The Plaintiff has consulted with MPOEC certified officers regarding this situation and have warned that if the Plaintiff would return, Plaintiff runs the risk of being unlawfull arrested, have pain compliance torture slave shackles applied, placed in a

vehicle and kidnapped from public. Plaintiff would be placed in a dungeon awaiting a hearing before a local magistrate.

209. The Plaintiff is prepared to encounter unlawul individuals representing authority, and the possibility that State Troopers will falsely charge Plaintiff with "Criminal Trespass After Warning."

210. It is not the Plaintiff's desire to trigger contempt for authority, but is prepared for additional Deprivation of Rights under Color of Law and reserves the option to add addition defendants.

211. This suit is filed in advance of the possible actions which may impact the Plaintiff and such actions may bring cause of action to amend this claim

212. On March 30th 2022, Plaintiff sent via certified mail, a Letter of Intent to Sue, to all of the School Board Members who violated the Plaintiffs civil rights in addition to Michelle Orner, School Superintendent.

213. The Letter of Intent to Sue had a 30-day interval for the Defendants to respond, negotiate and settle the claims.

214. The Letter of Intent to Sue had stated that if no response is provided, the action would move into Federal District Court.

215. On April 13, 2022, Plaintiff received a letter from Benjamin L Pratt, Octorara School Solicitor, providing a response to the private Letter of Intent to sue, directed at private actors, who are representing members of a school board in violation of their oath.

216. The Plaintiff understands that this is a private legal matter with private individuals, and did not respond to the false narrative by an individual who had no standing, or authority to represent school board members in a private litigation matter.

217. Plaintiff acknowledging the letter could lead to a false interpretation that I consent to the false representations of an attorney who has no standing.

281. The School Solicitors actions were a clear conflict of interest and a fiduciary conflict of using taxpayer resources to finance legal advice in a private matter.

282. Plaintiff attempted to identify tax payer funded expenses to the Solicitor for providing personal legal advice to school board members privately. This request was ignored.

283. Additional requests to obtain retainer agreements between the private individual school board members and the firm associated with School Solicitor and been sent. These RTKL requests were ignored.

284. On June 3rd, Plaintiff sent an email to Defendant Brian Fox, (Octorara School Board President) in an attempt to reason through a resolution regarding the school boards limit of authority, and to cease forcing unlawful policy.

285. Defendant Fox maintained or continues to maintain (at the time of this filing) his position, that Brian Fox and the Octorara School Board have the authority to enforce Policy 903 without regard to the constitutional violations repeatedly noted.

286. In the communication with Brian Fox, he committed his resolve to the issue and terminated all communication with Plaintiff.

287. On June 9 2022, Plaintiff attempted to coordinate, an on the record conversation with Brian Fox and extended an invitation to any other interested School Board Member. No response was provided to this communication. This communication was published publicly on social media, with no edits, to publicly see the manner in which School Board Members treat the public.

288. On June 13, 2022, Plaintiff sent communication to all Octorara School Board Members, with a copy of the communication between Plaintiff and Brian Fox. This was another attempt to reason with the School Board.

289. On June 16th, Plaintiff narrated a podcast of his intentions regarding the possibility of lawfully returning to the Octorara

School Board to redress his grievances and advocate on behalf of his clients.

290. On June 20th, the Plaintiff was attempting to obtain public documents regarding the agenda items for the School Board meeting scheduled for June 20th session.

291. The Plaintiff found that the most recent public posting was April 11th 2022, with no documentation available for the public to review or provide comment at the scheduled board meeting.

292. Plaintiff sent a message to a school board member inquiring as to why Policy information that is being presented at the June 20th Board Meeting (for first and second reading) were not in public view in violation of the Pennsylvania Sunshine Act.

293. The responsive School Board member, informed plaintiff, that the issue was presented to the school board, during the public meeting but prior to being on the record during public meeting.

294. The School Board secretary allegedly acknowledged the error. As of June 21st, the agenda items, along with the policy changes are not in public view.

295. It is further alleged that the Octorara School Superintendent continues to create a record of false narratives, and defamatory statements regarding the Plaintiff and the issues raised by the Plaintiff which demonstrate a reckless disregard for the law.

296. The Octorara School Board continues to craft policy language which would be further deprivations of citizens' rights under the Color of Law.

297. It is not possible for private citizens to speak into their concerns regarding these unlawful policies when the School Board and school administrators have a pattern and practice of violating their sworn oath and duties to the citizens.

298. On June 21st, the Octorara School Board website posted the missing agenda items in a dated manner to appear as they were current, to avoid transparency to their violation of the sunshine Act. A reasonable investigation of the School Board computer could verify this allegation. However, it is not reasonable to ensure that these records would be modified in the dark at the time of this Complaint being publicly filed and reviewed.

299. However, certain School Board Members could provide a sworn affidavit it required.

300. Octorara School District manages several public social media sites for conveying information to the public. These consist of a Facebook                                                                    Page https://www.facebook.com/groups/oasdparentsandfaculty a YouTube Channel: https://www.youtube.com/user/OctoraraAreaSD, and host a Zoom for school board meetings which invitation links are not consistently provided to the public to gain access.

301. All of these tools, as a function of their hosts design, provide for public comment and interaction. All of these sites have been configured by public officials, to preclude the ability for the general public to comment, thus prohibiting the Free Speech of concerned citizens.

302. It is well established that government actors cannot prohibit speech when using public forums:

- They cannot stop people from joining a public conversation on the social media account because of the views they express on the topics at hand.

- They cannot block critical voices from asking for government services through the social media account because of those critical viewpoints.

- They cannot prevent people from being able to see social media posts that publicly announce government information or policy because of their viewpoints.

303. On June 20th, Octorara School Board (OSB) stated that they are transitioning away from broadcasting board meetings on Zoom.

304. OSB has adopted a practice on Zoom to preclude public comments in a zoom chat feature during a live zoom.

304. OSB after a board meeting concludes, downloads the zoom video file and uploads it too the OctoraraAreSD YouTube Channel. OSB has disabled public comments on the YouTube channel further violating citizens free speech rights and demonstrating premeditated censorship.

305. It is also noted that users who have used the "raised hand" feature, to speak on Zoom, during public comment, have not been afforded the ability to speak, and ignored.

306. On June 20th, the board had indicated that they are evaluating recording or possibly hosting the School Board meetings live or recorded on YouTube. The existing OSB YouTube Channel has blocked all comments and now conversation exists to change this degree of censorship.

307. Regardless of the method the school board broadcasts public meetings, it is not reasonable to expect them to support public comment if they move forward.

308. On May 16th 2022, a concerned citizen, during the public comment section, posed a question to the school board. This question was related to any policy or guidelines regarding gaining access to bathrooms or locker rooms by students who identify as a different gender to their physical anatomy. This question was not noted in the Board Meeting notes.

309. It was reported that the school superintendent (at the conclusion of the public meeting), interacted with the individual and made reference to a policy. This policy was requested to be presented and reviewed.

310. A copy of this policy was obtained through alternate channels (as public records requests did not produce this document).

311. The document was obtained on 6/24/2022 and it was determined that the school board and the public had no knowledge of this policy. The policy is dated 1/20/2020 and was never in the sunshine, or approved by the board or the community.

312. On May 16th, 2022, private citizen Jay Lusby addressed the board regarding the school board's actions in the premeditated restriction of private citizens or advocates addressing the board on behalf of parents.

313. During this meeting, Board Member Anthony Falgiatore registered his objections (video time stamp 45:07) To the boards enforcement of policy 903. Mr. Falgiatore spoke specifically to the deprivation of rights by forced surrender of their 4th amendment to exercise their 1st amendment right of free speech. Mr. Falgiatore read a statement into the record and produced the statement to the Board Secretary for inclusion into the minutes.

314. Board President Fox states that compliance regarding the Sunshine Act is the basis to obligate a citizen to state their name and municipality so the Board complies with the Sunshine Act.

315. Mr. Falgiatore reached out to the Commonwealth of Pennsylvania, office of open records, (the entity which makes policy recommendations to all Commonwealth Public Schools) attempting to verify the statement by President Fox, obligating private citizens to surrender their rights. Of specific comment the office of open records cannot define a taxpayer.

316. The board declined to postpone the legal investigation on the limits of authority as claimed in an objection by Mr. Falgiatore and the claims presented to the board by the Plaintiff. The board voted and approved policy 903 with Mr. Falgiatore as the only Board Member on the record objecting to the civil rights violations. This was a public defiance by all board members and their express intent to violate citizens civil rights.

317. Private Citizen, Joey Rzonca had presented a Right to Know Law request to obtain the records, documents, communication between the school board and Pennsylvania Open Records office specific to the allegations that the Sunshine Act "requires" and provides "authority" to empower the school board to demand a citizen surrender their 4th amendment right, as a condition to exercise their 1st amendment right to redress government officials.

318. This request contained a creative fabricated response which citizen Rzonca determined was incomplete. Mr. Rzonca submitted an appeal to this request. The appeal response was received on July 27th and provided no documented evidence, nor records that such conversations, instructions, or reference material supported the authority or criteria represented publicly by Board Member Lisa Bowman and affirmed by the majority of board members.

319. Citizen Rzonca has filed a subsequent appeal, noting the misrepresentations in the initial appeal response and is awaiting a response. As of the date of filing the complaint, no response was forthcoming.

320. The Plaintiff has evidence that no State Agency has documented evidence of a Criminal Trespass Warning and violated Plaintiffs due process to even discuss the allegation or fallacious documents/emails in reference to being denied access to Octorara School District Property or Octorara School Board meeting.

321. Plaintiff still desires to be secure in his 4th amendment rights, and exercise his 1st amendment rights to speak at the appropriate time, at the appropriate place and in appropriate manner before the Octorara School Board.

322. Octorara School Board continues to structure, vote on policies before a public which has witnessed first-hand how they violate an informed, knowledgeable and respectful citizen and is

asking for support. It is not reasonable at all, that the citizens have faith in their elected officials as they function in the dark, ignore the citizens and are not accountable at all to the public and the Plaintiff is merely demonstrating the exhaustive effort which the common person must endure.

323. The Plaintiff desires to continue to document and record all communication, interactions for dissemination to interested parties to aid in private citizens moving towards being a valued contribution to public services and concerned caregivers of their children when in the custody of the public education system.

324. The Plaintiff must be prepared for further unlawful actions, by public servants which may include fraudulent claims, no sworn affidavits, no probable cause affidavits of criminal actions, possible violence, kidnapping, false imprisonment and being brought before a magistrate with false charges.

325. The Plaintiff's evidence is overwhelming to validate having no expectation of a lawful encounter with many individuals representing authority.

326. The Plaintiff desires and hopes for respectful, professional and lawful encounters, but being prepared is critical in this day and age.

327. It is reasonable that public servants with dig in deep as they have demonstrated, and continue in a manner derelict of their duties, reckless disregard of law, misrepresentation, slander, defamation. The mere desire to exercise of a right will result being converted to a crime. These possible events will be in direct violation of *Murdock v Pennsylvania* and be additional harms as identified in 18 U.S.C. § 241, 18 U.S.C. § 242 and 42 U.S.C § 1983. Harassment is part and parcel experience as an emotion response when encountering contempt of authority.

328. The Plaintiff reiterates the necessity to reserve all of his Constitutional Rights through this entire complaint process. Most specifically the right to record public officials in the course of their public duties.

329. It is imperative that private citizens have access to this case, and its forthcoming actions, to have a firsthand look into the process and their duties of knowing the law, and the limits of authority of those in public service. Public recording is the objective record which every law-abiding citizen is permitted to create. Absent of a record, one does not exist, runs the risk of being lost, destroyed, redacted.


**V. CAUSES OF ACTION**

COUNT ONE

RIGHT OF FREE SPEECH, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. §
1983 FACIAL CHALLENGE TO OCTORARA SCHOOL POLICY 903, SPEECH
CONTENT

330. Plaintiffs incorporate all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

331. The First Amendment embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. V Sullivan 376 U.S. 254 (1964)*. The government may not condition exercise of speech nor silence speech because it may criticize government and public officials or employees, or their favorite ideas, initiatives, ideologies, even if that speech does so in ways that many people may find unpleasant. Allegations of hurt feelings, real or spurious, or claims of creating a disturbance do not rise to the level of criminality nor justify censorship of public speech.

332. At the Octorara School Board meeting, Plaintiffs were private citizens who spoke or intended to speak as to a matter of public concern at a meeting held by local government officials where

citizens are allowed to peaceably assemble, associate, and engage in free speech as to matters of public concern.

333. The unlawful enforcement of policy on private citizens and students within the public education system is a matter of public concern.

334. Plaintiffs intended to exercise their First Amendment right to free speech, peaceably assemble, freedom of association and/or petition the government for a redress of grievances.

335. Plaintiff intended to be secure in his person, papers, property and affects from unlawful demands absent a sworn affidavit of probable cause that a crime had been committed, a crime was in progress or a crime was about to occur, to produce a warrant of arrest.

336. Plaintiffs' interest in exercising their First Amendment rights at the Octorara School board, at the appropriate time, appropriate place and in appropriate manner, for a limited as identified in the School Board Policy for 3 minutes, or such time extension afforded by the board. This intention to speak freely outweighs any interest in promoting the efficient operation and administration of government services when time is specifically allocated for public comment.

337. Defendants acted in concert to deprive Plaintiff of their protected First Amendment rights by imposing arbitrary and capricious rules restricting their freedom of speech, freedom to peaceably assemble, freedom of association, and freedom to petition the government for redress of grievance including rules that (1) prohibiting Plaintiffs from remaining secure in their private person from identifying. (2) by limiting the content or manner of a private individual seeking to redress elected officials. (3) by precluding public interaction on live stream videos of public meetings. (4) by precluding comments on social media websites with a page devoted to Octorara School District. (5) by removing public visibility, access and comment to records which should be in public view in compliance with the Sunshine Act.

338. Defendants represented Octorara School Policy "903" as an obligation of any citizen to provide their name and municipality, prior to being able to address the school board. The representation was the leveraging of surrendering a 4th amendment protected right as a condition to exercise a 2st amendment protected right.

339. Commonwealth Public School Board meetings are classified as a public forum "[A} public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain

speakers, or for the discussion of certain subjects." *Cornelius v NAACP Legal Def. & Educ. Fund* 473 U.S. 788, 802 (1985) (citation omitted). A limited public forum is "a subcategory of the designated public forum." *Barna v Bd. Of Sch. Dirs. Of the Panther Valley Sch. Dist.*, 877 F.3d 136, 142 n.2 (3d Cir. 2017) (internal quotation marks omitted).

340. A school board meeting at which the public is allowed to speak is a designated public forum limited to discussing school operation and governance. *Perry Educ. Ass'n v Perry Local Educators' Ass'n*, 460 U.S. 37, 45 & n.7 (1983). Accordingly, content-based restrictions on speech at school board meetings are only permissible to the extent they "confine the forum to the limited and legitimate purposes for which it was created." *Galena v. Leone*, 638 F.3d 186, 199 (3d Cir. 2011) (internal quotation marks omitted).

341. Plaintiff was required to surrender his 4th amendment right to approach the opportunity to express his 1st. It is not unreasonable that the Octorara School Board was involved in prior restraint, in the anticipation of the possible remarks Plaintiff would read into the record.

342. The government may not regulate speech, regulate recording, or preclude the public from commenting on all public areas which the school provides communication.

343. Courts have referred to "limited public forums" and nonpublic forums" interchangeably, and there is at times some uncertainty as to the distinction, if any, between these categories. *Porter v City of Philadelphia*, 975 F.3d 374, 386 n.75 (3d Cir. 2020). A nonpublic forum is "a space that is not by tradition or designation a forum for public communication." *Minn. Voters All v. Mansky*, 138 S. Ct. 1876, 1885 (2018). The government may reserve such a space "for its intended purposes, communication or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's views." *Id*. At 1885 (quoting Perry, 460 U.S. at 46).

344. The public comment periods of Octorara school board meetings are limited public for a, to be used by Octorara residents and "taxpayers" (any citizen who pays taxes to the Commonweath or the United States Government, where Octorara School is a recipient of State or Federal Funds) to discuss matters of concern related to the school district.

345. When Octorara School Board designated the appropriate time, place and manner in accordance with public comment on "agenda and non-agenda items," residents and "taxpayers" may discuss any matter bearing on school district; when Octorara designates comment on "agenda items," it limits discussion to matters on the agenda for that meeting.

346. It is axiomatic that criticism of school officials, school employees, school rules, regulations policies, and school curricula are germane to the business of school boards – regardless of whether the school board members want to hear such criticism or believe it is fair.

347. The First Amendment prohibits the exclusion of these view points from public speech at school board meetings, regardless of the meeting's forum classification. It is also unlawful to convert a constitutionally protected right into a crime (*Murdock v Pennsylvania*).

348. In the event, if Octorara School Board meetings are nonpublic for a, Policy 903's prohibitions on providing personally identifiable information, personally addressing or questioning school board members; and on speech deemed "personally directed," "abusive." "irrelevant" (as interpreted by Defendants to mean, not relevant to their views), "offensive," "otherwise inappropriate," or a "personal attack;" also violate the First Amendment right of free speech on their face because they are not reasonable regulations that advance the meetings' purposes, but rather serve only to suppress officially disfavored views.

349. To the extent that Policy 903's prohibitions on personally addressing or questioning school board members; and on speech deemed "personally directed," "abusive," "irrelevant" (as

interpreted by Defendants to mean, not relevant to their views), "offensive," "otherwise inappropriate," or a "personal attack," serve any legitimate function, these are substantially overbroad in violation of the First Amendment right of free speech.

350. By enforcing these provisions, Defendants, under color of law, deprive Plaintiff of the right to remain secure in their "person", "papers", "property" and affects in violation of the Fourth Amendment to the United States Constitution. Defendants, under color of law, deprived Plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

351. Defendants further acted in concert to deprive Plaintiff of his protected First Amendment rights and/or in retaliation for the free exercise of those rights by involving Pennsylvania State Troopers to execute an unlawful traffic stop.

352. Defendants further acted in concert to deprive Plaintiff of his protected First Amendment rights and/or in retaliation for the free exercise of those rights by Michele Orner and Brian Fox, through allegedly making a false report to Pennsylvania State Troopers for Plaintiff causing a disturbance. Both Octorara School District and Pennsylvania State Troopers have stated no documents, recordings, communication are available through RTKL requests. Pennsylvania State Trooper Kevin Kochka was derelict in his duty

to reasonably conduct an investigation to identify the criminal elements of the allegation, of a disturbance, and unlawfully removed Plaintiff from public property. Further, Trooper Kochka failed to investigate or perform a private persons arrest of the school board members violating their oath.

353. Defendants' actions deprived the Plaintiff of his First Amendment and 4th Amendment rights and terminated his ability to advocate on behalf of his clients with the school board.

354. Defendants had no lawful, compelling government interest to justify imposing rules that they imposed at the meeting and removing the Plaintiff from the meeting nor silencing the speech of any concerned citizen.

355. Defendants acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiffs First and Fourth amendment rights. It is reasonable to characterize the actions of the defendants as such as Plaintiff had more than reasonably documented the limits of public servant authority and the reasonable opportunity to correct their unlawful actions, well in advance of requiring a federal suit.

356. Defendants acted under the color of the laws, regulations and policies of the Commonwealth of Pennsylvania, the Pennsylvania Department of Education, and Octorara School Board policies, in carrying out the deprivations of First Amendment rights described

herein, along with Fourth Amendment deprivations. Defendants were acting in the course and scope of their duties and in varying degrees participated in a conspiracy to criminalize Plaintiffs attempt to stand on his 4th and 1st amendment protected rights.

357 Defendant School Board Members continue to construct and vote on additional policies which completely disregard the constitutionally protected rights of students, parents and guardians. School officials have no lawful authority to threaten, coerce, intimidate, or place any child or private citizen to surrender their rights in order to receive free and compulsory education subject to unconstitutional policies. The volume of constitutional violations being constructed and enforced by school officials that it is not reasonable that any citizen, a citizen advisory board or a broader coalition can influence school boards who are ignoring and not held accountable to their sworn oath and duties.

## COUNT 2

**42 U.S.C. § 1983: Deprivation of the right to equal protection under the Fourteenth Amendment.**

358. Plaintiff incorporates all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

359. All of Plaintiffs' public speech at Octorara school board meetings that Defendants have censored, including Plaintiff's in-person and online speech and written submissions, is fully protected by the First Amendment right to free speech.

360. The Plaintiff's public speech at Octorara school board meetings that Defendants have censored, including interactions with school solicitor, Chester County Detectives, Municipal police, District Attorney's office, State Police, and State Police legal counsel.

361. At no point did Defendants terminate or censor Plaintiff's speech on the basis of time, obscenity, or lack of decorum. Rather, Defendants censored Plaintiff's speech because they determined a citizen must surrender to fabricated conditions, or they feared they type of potential speech.

362. As-applied against Plaintiff, Policy 903's prohibitions on personally addressing or questioning school board members; and of speech deemed "personally directed," "abusive," "irrelevant" (as interpreted by Defendants to mean, not relevant to their views), "offensive," "otherwise inappropriate," or a "personal attack," violated and continue to violate Plaintiffs' First Amendment right of free speech by impermissibly discriminating against their speech on the basis of its content and viewpoint. Should Octorara's school board meetings be deemed nonpublic fora, these prohibitions

were and are not employed as reasonable regulations that advance the meetings' purposes, but rather serve only to suppress disfavored speech.

363. In violating Plaintiff's First Amendment rights, the individually named defendants have acted in a manner that was reckless, callous, intentional, or malicious. They have singled out Plaintiff for unknown reason on a discriminatory basis. Defendants launched spurious allegations, false narrative, fabricated motives, fabricated intentions, against the plaintiff, completely devoid of any objective evidence. The Defendants conspired to target Plaintiff's attempt to stand on constitutionally protected free rights, speech, and aggressively censored, silenced, Plaintiff in a demeaning, authoritarian, pontificating, angry and emotionally manipulative manner that evinces a profound hostility to Plaintiff's well-established First Amendment rights.

364. By enforcing these provisions against Plaintiff, Defendants, under color of law, deprived and continue to deprive Plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to damages, including punitive damages; declaratory and preliminary and permanent injunctive relief against continued

enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

365. The Plaintiff resulted discrimination and put in harm's way, directly as a result, allegedly, by Octorara School Board President (Brian Fox), School Superintendent (Michelle Orner) and conjunction with statements or communication with Chester County Pennsylvania Detectives. Through strict adherence to Policy 903, devoid of investigating the seriousness of the Color of Law warning presented by Plaintiff, Brian Fox acted uninterrupted by any other board members. Plaintiff alleges that Brian Fox, Michelle Orner, Chester County Detectives, conspired to remove plaintiff from public school board meeting. State Trooper Kochka, allegedly engaged the Plaintiff to remove Plaintiff from public meeting. Trooper Kochka was derelict in his duties, and did not perform an investigation and fabricated statements of the Plaintiff being asked to leave and that the Plaintiff was involved in creating a disturbance. It is not lawful to convert a constitutionally protected activity (remaining secure in one's person, papers, property and affects, along with exercising free speech at the appropriate time place and manner). This would be a direct deprivation of rights under color of law (Murdock v Pennsylvania). The actions of the board regarding the Plaintiff were clearly discriminatory and evidence will show that another private

citizen, acted in a manner meeting the legal definition of a
disturbance/disruption was ignored and no law enforcement called,
and the incident was undocumented in the school minutes. The other
citizen is captured on video issuing verbal threats (terroristic
in nature) to specific board members. These disruptive outbursts
by another citizen were during non-sanctioned public commenting
period and violated the time, place, manner restrictions allegedly
enforced by Octorara School Board.   (Provide link to video)
Defendants acted in concert to deprive Plaintiffs of their right
to equal protection of the law, as guaranteed by the Fourteenth
Amendment.

366. Defendants acted willfully, deliberately, maliciously, or
with reckless disregard for the Plaintiffs Fourteenth Amendment
equal protection rights.

367. All of Plaintiffs public speech at Octorara school board
meetings along with other private citizens attempting to speak has
been censored or silenced. All means of public interaction on tools
such as Zoom comments, YouTube Comments, Facebook comments are
precluded by Octorara School Board.

368. Defendants acted under color of the laws and regulations of
the Commonwealth of Pennsylvania, Octorara School Board, and
Chester County in carrying out the deprivations of Fourteenth
Amendment rights as described herein. Brian Fox was acting in the

course and scope of his duties as the President of the Octorara School Board. School Board members did not restrain the unlawful actions of Defendant Brian Fox even after sufficient notice and warning.  The silence of the Defendants after notice of the color of law violations were conducted in each Defendants private person capacity or were under the direction of some other authority to remain silent.

369. Right to Know Law requests to obtain any documents of registered objections to the color of law violations resulted in one single board member, documenting, on the record, an objection. This objection was registered by Board Member Anthony Falgiatore, and he is not a named defendant in this complaint. As no other objections are on the record, all other board members are involved in the conspiracy to deprive the Plaintiff of his 1st, 4th and 14th amendment protected rights.

370. The State Troopers (Trooper Kevin Kochka) and other officers to be named, were acting in the course and scope of their duties as police officers with their respective departments. All officers violated law enforcement policy (CLEA, MOPEC) and failed to produce identifying information confirming they had the credentials and certification to act in the authority they represented. Law Enforcement policy and MPOEC certification states that an officer must present their MPOEC card upon request. In this day and age,

it is not reasonable for any citizen to trust the representation of authority to be lawful absent of determining the legitimacy of that authority based upon the authorizing entity's credentials consistent with policy.

371. By Octorara School Board enforcing Policy 903 against Plaintiff, Defendants, under color of law, deprived and continue to deprive Plaintiff and countless other private citizens of the right to be secure in the Fourth Amendment and their freedom to exercise free speech in violation of the First and Fourteenth Amendments of the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to damages, including punitive damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

**COUNT THREE**

**RIGHT TO PETITION, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983**

**FACIAL CHALLENGE TO OCTORARA POLICY 903, SPEECH CONTENT**

372. Plaintiff incorporates all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

373. "The right to petition the government is one of the most precious of the liberties safeguarded by the Bill of Rights. The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances. Petitioning serves numerous, fundamental interests of petitioners and the government alike. It is essential to freedom, liberty and self-government. Petitions contribute to the public airing of disputes, the evolution of the law, and the use of government as an alternative to force." Mirabella v. Villard, 853 F.3d 641, 653-54 (3d Cir. 2017) (internal quotation marks and citations omitted).

374. "A petition may undoubtedly consist of a personal grievance addressed to the government. But petitions to the government assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole. A petition . . . may include an oral grievance." Id. at 654 (internal quotation marks omitted).

375. Public comment periods at school board meetings are fora whose purpose, in large part, is to enable people to exercise their fundamental First Amendment right of petition.

376. Policy 903's prohibitions on personally addressing or questioning school board members; and on speech deemed "personally

directed," "abusive," "irrelevant" (as interpreted by Defendants to mean, not relevant to their views), "offensive," "otherwise inappropriate," or a "personal attack;" violate the First Amendment right to petition on their face by impermissibly prohibiting and limiting petitions on the basis of content and viewpoint. These prohibitions are not designed to confine the forum to the limited and legitimate purposes for which it was created, but rather, to suppress petitions for redress, respecting matters properly before the school board, when Defendants disagree with the petitions and do not wish to have their authority or judgment challenged, and do not wish to have aired any dissenting viewpoints to their rule.

377. In the alternative, if Octorara school board meetings are nonpublic fora, Policy 903's prohibitions on personally addressing or questioning school board members; and on speech deemed "personally directed," "abusive," "irrelevant" (as interpreted by Defendants to mean, not relevant to their views), "offensive," "otherwise inappropriate," or a "personal attack;" also violate the First Amendment right of petition on their face because they are not reasonable regulations that advance the meetings' purposes, but rather serve only to suppress officially disfavored petitions.

378. To the extent that Policy 903's prohibitions on personally addressing or questioning school board members; and on speech deemed "personally directed," "abusive," "irrelevant" (as interpreted by Defendants to mean, not relevant to their views), "offensive," "otherwise inappropriate," or a "personal attack," serve any legitimate function, these are substantially overbroad in violation of the First Amendment right of petition.

379. By enforcing these provisions, Defendants, under color of law, deprive Plaintiff of the right to petition in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement.

## COUNT FOUR

**RIGHT TO PETITION, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983**

**AS-APPLIED CHALLENGE TO OCTORARA POLICY 903, SPEECH CONTENT**

380. Plaintiff incorporates all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

381. All of Plaintiff's public speech, or attempt to speak, at Octorara school board meetings that Defendants have censored, including Plaintiffs' in-person and online speech and written

submissions, is fully protected by the First Amendment right to petition the government for a redress of grievances.

382. As-applied against Plaintiff, Policy 903's prohibitions on personally addressing or questioning school board members; and on speech deemed "personally directed," "abusive," "irrelevant" (as interpreted by Defendants to mean, not relevant to their views), "offensive," "otherwise inappropriate," or a "personal attack," violated and continue to violate Plaintiffs' First Amendment right to petition by impermissibly discriminating against their petitions on the basis of their content and viewpoint. Should Octorara's school board meetings be deemed nonpublic fora, these prohibitions were and are not employed as reasonable regulations that advance the meetings' purposes, but rather serve only to suppress disfavored petitions.

383. By enforcing these provisions against Plaintiff, Defendants, under color of law, deprived and continue to deprive Plaintiffs of the right to petition in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to damages, including punitive damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional

customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988

## COUNT FIVE

### CONSPIRACY TO VIOLATE CIVIL RIGHTS U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

384. Plaintiff incorporates all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

385. The individuals assigned in the Defendant Matrix, conspired to violate Plaintiffs' First Amendment rights of free speech and petition by suppressing, under color of state law, written and oral public comments, establishing conditions for Plaintiff to surrender his Fourth Amendment right as a prerequisite to exercise his First Amendment right of free speech. Additionally, defendants participated in orchestrating a narrative where the defendant's potential speech could be criminal in nature or scope. This would have been including reflecting on viewpoints with which the defendants disagreed; and thereafter, acted in furtherance of that conspiracy by censoring Plaintiff's speech on the basis of viewpoint.

386. Defendants' unlawful agreement is reflected, in part, in their recorded conversations of the Octorara School Board's

YouTube Channel during school board meetings from the first encounter with Plaintiff up to and including the date of this complaint filing. All identified defendants (defendant matrix) endorsed a plan of unlawful censorship, in which the other school board members apparently acquiesced and ratified through public voting to approve the 2nd read changes to Policy 903 which ignored Constitutional Violations when enforced. Acts in further of the conspiracy include the termination of conversation between the plaintiff and Board President Brian Fox, and the ignoring of a meeting between other board members to discuss policy 903 modifications which do not deprive citizens of their constitutionally protected rights.

387. By conspiring to deprive Plaintiff of their First Amendment speech and petition rights under color of state law, and thereafter following through and implementing said conspiracy, Defendants, under color of law, deprived and continue to deprive Plaintiff of the rights to free speech and petition in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to damages, including punitive damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

## COUNT SIX

**RIGHT OF FREE SPEECH, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. §**

**1983 FACIAL CHALLENGE TO OCTORARA POLICY 903, ADDRESS**

DISCLOSURE

388. Plaintiff incorporates all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

389. The right to speak freely includes the right to not speak. "[T]he First Amendment, subject only to narrow and well-understood exceptions, does not countenance governmental control over the content Case 2:21-cv-04336 Document 1 Filed 10/01/21 Page 59 of 65 60 of messages expressed by private individuals." Turner Broad. Sys. v. FCC, 512 U.S. 622, 641 (1994) (citations omitted).

390. Octorara's requirement that speakers at public comment periods preface their remarks by announcing their name and municipality, only appears content-neutral. Enforcement of this requirement is meant to intimidate speakers who would express controversial views. To be sure, verifying a speakers' name and municipality, may advance Octorara's interest in limiting public comment access to its residents and taxpayers. But there is no need to require that speakers publicly announce their address, and direct potential reprisal to their homes. Even if the address

announcement requirement is content-neutral, it is not properly tailored to advancing any government interest.

**391.** By enforcing this provision, Defendants, under color of law, deprive Plaintiff of the right of free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

**COUNT SEVEN**

**VAGUENESS, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983 OCTORARA POLICY 903**

392. Plaintiff incorporates all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

393. As notice is the first element of due process, the Fourteenth Amendment guarantee of Due Process prohibits the enforcement of vague laws. The First Amendment likewise forbids the enforcement of laws that, however valid their application may be in some instances, are so vague as to chill protected speech.

394. Policy 903's prohibitions of speech deemed "personally directed," "abusive," "irrelevant" (as interpreted by Defendants to mean, not relevant to their views), "offensive," "otherwise

inappropriate," or a "personal attack," are each unduly vague, serving only to authorize Defendants' arbitrary censorship of speech they dislike. Additionally, prohibitions, restrictions or conditions such as citizens being obligated provide their name and municipality as a prerequisite to exercise their First Amendment Right of free speech.

395. By enforcing these provisions, Defendants, under color of law, deprive Plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution and are therefore entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

## COUNT EIGHT

### CONSPIRACY TO VIOLATE CIVIL RIGHTS U.S. CONST. AMENDS.  18 U.S.C. § 242

396. Plaintiff incorporates all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

397. Defendants functioned in groups, (actors representing School Board authority, actors representing School Administration/Solicitor authority, actors representing State

Police authority, actors representing Municipal Police, actors representing County Detectives authority, actor(s) representing legal authority (district attorney, solicitor, RTKL appeals counsel, etc.) collaboratively, collectively, premeditatedly in gross disregard of the law and the constitutional rights of a private citizen. Defendants conspired to convert constitutionally protected rights under the Fourth Amendment, and the First Amendment.

398. The deprivation of rights under color of authority further denied due process as established in the Fourteenth Amendment. Murdock v Pennsylvania has clearly established that the mere exercise of a constitutional right cannot be converted in to suspicious conduct nor a criminal act.

399. It is not reasonable for public officials to know all the laws they are to follow or enforce as established in Graham v Conner. The Supreme Court requires private citizens to correct mis-statements, misrepresentations and mischaracterizations of the law if it is not firmly established law, and practice under the law.

400. Plaintiff, exhaustively attempted to reason, inform, advise, correct Defendants to prevent them from violating firmly recognized rights in Plaintiffs lawful, reasonable and respectful

desires to exercise Plaintiffs Fourth and First amendment rights and was deprived of those rights.

401. Plaintiff also incorporates the above claim to be inclusive of violating 18 USC 242.

## COUNT NINE

### DESTRUCTION OF PUBLIC RECORDS IN VIOLATION OF 18 U.S.C. § 2071

402. Plaintiff incorporates all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

403. Defendants identified Defendant Matrix under Claim 9, in response to a public record request, was denied such a record exists. Plaintiff evidence reveals that a document does exist and that the Defendants in ability to produce such document, and in some instances forwarded the actual document requested, affirmed the nonexistence of a public record.

404. Named defendants operated in their own capacity to destroy a public record, which included exculpatory information, in addition to fabrications to malign, defame, slander the lawful actions of the Plaintiff.

## COUNT TEN

### VIOLATION OF THE COMMONWEALTH OF PENNSYLVANIA SUNSHINE ACT (OPEN MEETINGS LAW) 64 Pa. C.S. §§ 701-716

405. Plaintiff incorporates all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

406. Defendants identified in the Defendant Matrix, premeditatedly, purposefully, prevented full public presentation, announcement, access, or visibility to public record information regarding items discussed during public meetings in advance of public meetings.

407. Defendants have established a pattern and practice of producing incomplete meeting minutes in presenting audience and board members concerns when presented during public meeting.

408. Defendants have established a pattern and practice of not presenting to the public, information the public submits to the board with a clear, audible, and written request to be documented, in its entirety, into the public record meeting minutes and attachments.

409. Defendants have established a pattern and practice of adding opinion and narrative, on the record, inconsistent with objective evidence, research or data.

410. Defendants claimed to researched the criteria established by the Office of Open Records which obligates the School Board to document citizen's names and municipality in public meeting minutes. The Office of Open Records has established no obligation

and has no documentation to support the allegation and the Octorara Board Meeting statements on record contradict the Office of Open Records.

411. Octorara School District is enforcing Guidelines upon parents and citizens which have many constitutional violations which have never been viewed by the citizens and just recently viewed by the School Board.

412. Octorara School Board, on the public record, is asserting the School Board, School Administration, School Employees have the lawful authority to enforce policy, contact law enforcement for policy violations, without regard to a student or citizens Constitutional rights.

**V DAMAGES**

413. Plaintiff incorporates all factual allegations contained in the foregoing paragraphs as though fully set forth herein.

414. As a direct and proximate result of Defendant's actions in depriving Plaintiff of their constitutional rights and in retaliating against him for the free exercise thereof, Plaintiff suffered mental anguish in the past and future and damage to their reputations in the past and future

**VI ATTORNEY FEES & COSTS**

415. Plaintiff is entitled to an award of attorneys' fees and costs under 42 U.S.C. § 1988(b).

**VII PRAYER**

416. WHEREFORE, Plaintiffs pray for judgment against Defendants for the following:

417. An order permanently enjoining defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing:

418. Octorara School Board Policy 903's prohibitions of speech deemed "personally directed," "abusive," "irrelevant," "offensive," "otherwise inappropriate," or a "personal attack;"

419. Octorara School Board Policy 903's requirement that speakers at public comment periods preface their remarks by announcing their name and municipality;

420. Declaratory relief consistent with the injunction, to the effect that Octorara School Board Policy 903 speech prohibitions are unconstitutionally void and unenforceable as they violate the First Amendment rights of free speech and petition, the Fourth Amendment of privacy, and the Fourteenth Amendment's guarantee of due process against vague laws; and that Octorara School Board

Policy 903's name, municipality disclosure rule violates the First Amendment right of free speech;

421. Cost of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and

Award Consideration

422. Plaintiff has requested a trial by jury for a number of reasons.

423. To provide illumination to a jury of the defendant's peers the actions perpetrated under the Color of Law.

424. To provide an educational experience to challenge their closely held beliefs of our position in society as constructed through legislation and Supreme Court Precedent.

425. To demonstrate the burden Government places upon citizens in their attempt to hold public officials accountable.

426. The Plaintiff is not an attorney nor a lawyer, but a private citizen, which is demonstrating the importance of self-representation.

427. The Plaintiff acknowledges that taking a case through a qualified immunity protected action, could settle at a measurable financial award funded by taxpayers. However, the taxpayers are

the victims, and are unaware that they are victims paying restitution to themselves.

428. Further, a qualified immunity protected case, regardless of settlement, rarely creates a change in behavior by public servants, it is merely a slap-on-the-wrist and their only inconvenience is related to deposition or trial. Rarely is there an impact to their position, compensation, promotion, benefits or any financial harm at all.

429. As the Plaintiff, I have been clear in my lack of desire to bring a Federal Complaint, and was hoping to affect change with reasonable public officials. As the Plaintiff, I have no power, I only have redress and the opportunity for remedy inside of this court.

430. My Prayer is that through this experience, review of the facts, review of evidence and possible testimony or deposition, that when you arrive at a reasonable decision.

431. The Plaintiff desires this to be a chance for We The People to see that our Constitution is still alive, and learn what the burdens are to hold elected officials accountable.

432. Regardless of the ruling, the result will tell us a few things.

433. What percentage of private citizens can prepare a case like this?

434. If the case fails, what else does the government expect of its citizens.

435. If the case succeeds, measure the award as a message to all public servants, so this education can spread far and wide.

436. An award of nominal, compensatory, and punitive damages to Plaintiff from all Defendants, jointly and severally, for their actions in violating the Plaintiffs constitutional rights;

437. Review of documents submitted to named defendants presented as "letter of intent to sue" as a guide for determining award.

438. Reasonable and necessary attorneys' fees, costs, and expenses;

439. Permanent injunctive relief restraining Defendants from imposing similar unlawful exercise of unlawful criminalization of constitutional rights in the future; and all other and further relief to which Plaintiffs may be justly entitled.

440. Training to named defendants and the employees within their departments regarding the rights secured under the 4th amendment and the unlawful use of Threats, Intimidation, Coercion, Duress and Violence to unlawfully make demands requiring surrender of a Citizen's 4th amendment protections.

441. All Board Members of the Octorara School Board will be considered for removal from their positions due to their repeated conduct specific to reckless disregard of the law, violation of protecting citizens' rights and repeated refusal and negligence in complying with the Sunshine Act, Right To Know Law process, and criminal conspiracy against plaintiff and other harmed private citizens.

442. Additionally, all named defendants will prepare a written apology addressing all private citizens for their errors, negligence and unlawful actions. This statement would be presented in written form to local media. Also, Plaintiff requests the defendant create a recorded video of them reading their written statement to be published on their departmental social media site, with comments from the public enabled.

**Defendant / Claim Matrix**

443. Not all named Defendants are alleged to have perpetrated all Counts registered in the Complaint. Plaintiff created a matrix which identifies each named defendant and their associated alleged crimes.

Caveat:

444. It is the sincerest of desires of the Plaintiff to not encounter additional individuals who claim to represent authority

act under color of law. The Plaintiff's experience is that expecting public servants to honor their oath is not a reasonable expectation. Additionally, it is not reasonable for the Plaintiff to remain safe if attempting to correct false statements by public servants. The Plaintiff, upon submission of the complaint will attempt to document official service of key individuals of the summons. The Plaintiff hopes that this will be affected without issue. However, it is probable that the Plaintiff will experience refusal of service, denial of access to public facilities, attempts to trespass or criminalize lawful activities, and additional conspiratorial acts in violation of Murdock v Pennsylvania. In the event these actions do occur and are subsequently documented as it relates to this case, the Plaintiff wants the option to potentially include additional defendants to this complaint.

| Name | Email | Company | Website | Address | City | State | Zip | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | CLAIMS | | | | | |
| Thomas Nelling | tnelling@pa.gov | Birmingham Township Police | https://www.birminghamtownship.org | 1040 West Street Road | West Chester | PA | 19382 | | | | | | | | | | | x |
| Joseph Elias | jelias@caintownship.org | Cain Township Police | https://www.caintownship.org | 253 Municipal Drive | Thorndale | PA | 19372 | | | | | | | | | | | x |
| Tracey Laws | tlaws@caintownship.org | Cain Township Police | https://www.caintownship.org | 253 Municipal Drive | Thorndale | PA | 19372 | | | | | | | | | | | x |
| Mitchell Rock | mrock@caintownship.org | Cain Township Police | https://www.caintownship.org | 253 Municipal Drive | Thorndale | PA | 19372 | | | | | | | | | | | x |
| Thomas Goggin | goggin@chesco.org | Chester County Detectives | https://www.chesco.org | 201 West Market Street | West Chester | PA | 19380 | x | x | x | x | x | x | x | x | x | x | x |
| John O'Donnell | jodonnell@chesco.org | Chester County Detectives | https://www.chesco.org | 201 West Market Street | West Chester | PA | 19380 | x | x | x | x | x | x | x | x | x | x | x |
| David Sassa | | Chester County Detectives | https://www.chesco.org | 201 West Market Street | West Chester | PA | 19380 | x | x | x | x | x | x | x | x | x | x | x |
| Robert Dougherty | rdougherty@chesco.org | Chester County Detectives | https://www.chesco.org | 201 West Market Street | West Chester | PA | 19380 | x | x | x | x | x | x | x | x | x | x | x |
| Debra Ryan | dacontact1@chesco.org | Chester County District Attorney | https://www.chesco.org | 313 West Market Street | West Chester | PA | 19380 | x | x | x | x | x | x | x | x | x | x | x |
| Robert LaCourt | police@cheyney.edu | Cheyney University | https://cheyney.edu | 1837 University Circle | Cheyney | PA | 19319 | | | | | | | | | | | x |
| Richard Finfrock | finfrock@christianapd.org | Christiana Police | https://christianapd.org | 10 West Solokon Ave | Christiana | PA | 17509 | | | | | | | | | | | x |
| Richard Finfrock | mainejam@christianapd.org | Christiana Police Department | https://lancaster.crimewatchpa.com/christianapd | 10 West Solokon Ave | Christiana | PA | 17509 | | | | | | | | | | | x |
| Frank Galbraith | galbraith@casdschools.org | Coatesville Area School District Police | https://www.casdschools.org | 3030 C. G. Zinn Road | Thorndale | PA | 19372 | | | | | | | | | | | x |
| Mary Friedberg | friedbergm@casdschools.org | Coatesville Area School District Police | https://www.casdschools.org | 3030 C. G. Zinn Road | Thorndale | PA | 19372 | | | | | | | | | | | x |
| Dolores D'Amore | damored@casdschools.org | Coatesville Area School District Police | https://www.casdschools.org | 3030 C. G. Zinn Road | Thorndale | PA | 19372 | | | | | | | | | | | x |
| Jack Laufer | JLaufer@coatesville.org | Coatesville Police | https://www.coatesville.org | 1 City Hall Place | Coatesville | PA | 19320 | | | | | | | | | | | x |
| Gerald Boorse | gerald.boorse@pa.gov | Coatesville VA Medical Center | https://www.va.gov/coatesville-health-care/ | 1400 Blackhorse Hill Road | Coatesville | PA | 19320 | | | | | | | | | | | x |
| Howard Holland | hholland@downingtown.org | Downingtown Police | https://www.downingtown.org/police-department | 10 W. Lancaster Ave | Downingtown | PA | 19335 | | | | | | | | | | | x |
| Georgene D' Carlo | gcarbo@downingtown.org | Downingtown Police | https://www.downingtown.org/police-department | 10 W. Lancaster Ave | Downingtown | PA | 19335 | | | | | | | | | | | x |
| Lisa Taraschi | lisa@eabrandywine.org | East Brandywine Police | https://www.eabrandywine.org | 1214 Horseshoe Pike | Downingtown | PA | 19335 | | | | | | | | | | | x |
| William Mossman | wmossman@eastcoventry-pa.gov | East Coventry Police | https://www.eastcoventry-pa.gov | 855 Ellis Woods Road | Pottstown | PA | 19465 | | | | | | | | | | | x |
| Robert Clarke | rclarke@eastmarlborough.org | East Marlborough Township Police | https://www.eastmarlborough.org | 721 Unionville Road | Kennett Square | PA | 19348 | | | | | | | | | | | x |
| Michelle Major | mmajor@eastpikeland.org | East Pikeland Police | https://www.eastpikeland.org/ | 1158 Rapps Dam Road | Kimberton | PA | 19442 | | | | | | | | | | | x |
| Joseph Heyman | jheyman@eastpikeland.org | East Pikeland Police | https://www.eastpikeland.org | 1158 Rapps Dam Road | Phoenixville | PA | 19460 | | | | | | | | | | | x |
| Matt Williams | williams@eastvincent.org | East Vincent Police | https://www.eastvincent.org | 262 Ridge Road | Spring City | PA | 19475 | | | | | | | | | | | x |
| Chris Yeager | cyeager@eastwhiteland.org | East Whiteland Police | https://www.eastwhiteland.org/196/Police-Department | 209 Conestoga Road | Frazer | PA | 19355 | | | | | | | | | | | x |
| Joe Miles | jmiles@eastwhiteland.org | East Whiteland Police | https://www.eastwhiteland.org/196/Police-Department | 209 Conestoga Road | Frazer | PA | 19355 | | | | | | | | | | | x |
| Dixie Stachnik | dstrachnik@easttown.org | Easttown Police Department | https://easttownpa.org | 566 Beaumont Road | Devon | PA | 19333 | | | | | | | | | | | x |
| Calvin Wilson | chief@htecpolice.com | Honey Brook Borough Police Department | https://honeybrookborough.net/public-safety/police/ | 917 Pequa Avenue | Honey Brook | PA | 19344 | | | | | | | | | | | x |
| Benjamin Pratt | pratt@kkll.law | Kagel, Klein, Litts & Lord | https://www.kkll.law | 24 North Lime Street | Lancaster | PA | 17602 | | | | | | | | | | | x |
| William Holdsworth | wonahue@pa.gov | Kennett Square Borough | https://kennettsq.org | 120 Marshall Street | Kennett Square | PA | 19348 | | | | | | | | | | | x |
| Matthew Gordon | matthew.gordon@kennett.pa.us | Kennett Square Borough | https://www.kennettsq.org | 120 Marshall Street | Kennett Square | PA | 19348 | | | | | | | | | | | x |
| Marc Partee | mpartee@lincoln.edu | Lincoln University | https://lincoln.edu/public-safety/index.html | International Cultural Center | Lincoln University | PA | 19352 | | | | | | | | | | | x |
| Louis Marcelli | lmcceli@malvern.org | Malvern Police | https://malvern.org | 1 East 1st Avenue #1 | Malvern | PA | 19355 | | | | | | | | | | | x |
| Louis Marcelli | cladtman@malvern.org | Malvern Police | https://malvern.org | 1 East 1st Avenue #1 | Malvern | PA | 19355 | | | | | | | | | | | x |
| Matthew Deichert | | North Coventry Police | https://www.chestercrimewatchpa.com/ncpd | 843 South Hanover Street | Pottstown | PA | 19465 | | | | | | | | | | | x |
| Ann Gery | agery@norcopd.com | North Coventry Police | https://www.chestercrimewatchpa.com/ncpd | 843 South Hanover Street | Pottstown | PA | 19465 | | | | | | | | | | | x |
| Samuel Iacono | chief@oxfordboro.org | Oxford Borough | https://oxfordboro.org | 1 Octorara Alley | Oxford | PA | 19363 | | | | | | | | | | | x |
| Maria avila | pdadmin@oxfordboro.org | Oxford Borough | https://oxfordboro.org | 1 Octorara Alley | Oxford | PA | 19363 | | | | | | | | | | | x |
| Brian Smith | aampg@parkesburg.org | Parkesburg Police | https://www.chester.crimewatchpa.com/parkesburg | 315 West 1st Avenue | Parkesburg | PA | 19365 | | | | | | | | | | | x |
| Shawn Mathiaud | | Pennsylvania Attorney Generals Office | https://granitautorney.psu.edu | | | PA | | | | | | | | | | | | x |
| Rachel Zeltman | rzeltmann@pa.gov | Pennsylvania State Police | https://www.psp.pa.gov | 1800 Elmerton Avenue | Harrisburg | PA | 17110 | | | | | | | | | | | x |
| Andrew Lovette | alovette@pa.gov | Pennsylvania State Police | https://www.psp.pa.gov | 1800 Elmerton Avenue | Harrisburg | PA | 17110 | | | | | | | | | | | x |
| William Rozier | wrozier@pa.gov | Pennsylvania State Police | https://www.psp.pa.gov | 1800 Elmerton Avenue | Harrisburg | PA | 17110 | | | | | | | | | | | x |
| Melissa Laughlin | mlaughlin@pa.gov | Pennsylvania State Police | https://www.psp.pa.gov | 1800 Elmerton Avenue | Harrisburg | PA | 17110 | | | | | | | | | | | x |
| Erin Burlew | eburlew@pa.gov | Pennsylvania State Police | https://www.psp.pa.gov | 1800 Elmerton Avenue | Harrisburg | PA | 17110 | | | | | | | | | | | x |
| Kevin Kochka | kkochka@pa.gov | Pennsylvania State Trooper | https://www.psp.pa.gov | 2099 Lincoln Highway East | Lancaster | PA | 17602 | | | | | | | | | | | x |
| Sanjay Bridges | ssb215@psu.edu | Pennsylvania State University Great Valley | https://greatvalley.psu.edu/211/Services | 30 East Swedesford Road | Malvern | PA | 19355 | | | | | | | | | | | x |
| Brian Marshall | bmarshall@phoenixville.org | Phoenixville Police | https://phoenixville.org/211/Services | 351 Bridge Street | Phoenixville | PA | 19460 | | | | | | | | | | | x |
| Danielle Wade | dwade@phoenixville.org | Phoenixville Police | https://phoenixville.org | 351 Bridge Street | Phoenixville | PA | 19460 | | | | | | | | | | | x |
| Michael Hawley | saddsburychief@comcast.net | Sadsbury Township Police | https://www.sadsburytwp.org | 2900 Lincoln Highway | Sadsburyville | PA | 19369 | | | | | | | | | | | x |
| John Flynn | jflyn@schuylkillriver.org | Schuylkill Township Police | https://scyriverpolice.org | 111 Valley Park Road | Phoenixville | PA | 19460 | | | | | | | | | | | x |
| Kevin Pyle | kpyle@south-coatesville.org | South Coatesville Police | https://www.southcoatesville.org | 134 Modena Road | Coatesville | PA | 19320 | | | | | | | | | | | x |
| Chief Simpson | simpson@scpd.org | Southern Chester County Police | https://chester.crimewatchpa.com/sccpd | 8934 Gap Newport Pike | Landenberg | PA | 19350 | | | | | | | | | | | x |
| Ryan White | chiefwhite@springcitypa.gov | Spring City Police | https://springcitypa.gov | 6 South Church Street | Spring City | PA | 19475 | | | | | | | | | | | x |
| Timothy Brown | jakhair@tredyffrin.org | Tredyffrin Township Police | https://tredyffrin.org | 1100 Duportail Road | Berwyn | PA | 19312 | | | | | | | | | | | x |
| Mike Beaty | mbeaty@tredyffrin.org | Tredyffrin Township Police | https://tredyffrin.org | 1100 Duportail Road | Berwyn | PA | 19312 | | | | | | | | | | | x |
| John DeMarco | jdemarco@upperuwchlan-pa.gov | Upper Uwchlan Township Police | https://www.upperuwchlan-pa.gov | 140 Pottstown Pike | Chester Springs | PA | 19425 | | | | | | | | | | | x |
| Scott Alexander | salexander@uwchlan.com | Uwchlan Township Police | https://www.uwchlan.com | 715 North Ship Road | Exton | PA | 19341 | | | | | | | | | | | x |

| Name | Email | Company | Website | Address | City | State | Zip | CLAIMS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| Timothy Parker | parker@valleytownship.org | Valley Township Police | https://valleytownship.org | 1145 West Lincoln Highway | Coatesville | PA | 19320 | | | | | | | | | x | x | |
| Jeff Kones | tseidenbuehl@westcain.org | West Cain township | https://www.westcain.org | 721 West Kings Highway | Coatesville | PA | 19320 | | | | | | | | | x | x | |
| Thomas Siedenbuehl | jmorehead@west-chester.com | West Chester Police | https://west-chester.com/193/Police-Department | 401 East Gay St | West Chester | PA | 19380 | | | | | | | | | x | | |
| James Morehead | rstevenson@wcupa.edu | West Chester University Police | https://wcupa.edu | 700 South High Street | West Chester | PA | 19383 | | | | | | | | | | | |
| Raymond Stevenson | wfpd@zoominternet.com | West Fallowfield Police Department | https://www.westfallowfieldtownship.org | 3095 Limestone Road | Cochranville | PA | 19330 | | | | | | | | x | | | x |
| Eric Hughes | mcarroll@westgoshen.org | West Goshen Police Department | https://www.westgoshen.org | 1025 Paoli Pike | West Chester | PA | 19380 | | | | | | | | | | | |
| Michael Carroll | jharper@westgoshen.org | West Goshen Police Department | https://www.westgoshen.org | 1025 Paoli Pike | West Chester | PA | 19380 | | | | | | | | | x | | |
| Jessica Harper | chief@westpikeland.com | West Pikeland Police | https://www.westpikeland.com | 1645 Art School Road | Chester Springs | PA | 19425 | | | | | | | | | x | | |
| Shane Clark | chief@westvincenttwp.org | West Vincent Township Police | https://westvincenttwp.org | 729 Saint Matthews Road | Chester Springs | PA | 19425 | | | | | | | | | | | |
| Michael Swininger | lberson@westwhiteland.org | West Whiteland Police | https://www.westwhiteland.org | 101 Commerce Drive | Exton | PA | 19341 | | | | | | | | x | | | x |
| Lee Benison | JKeller@westwhiteland.org | West Whiteland Police | https://www.westwhiteland.org | 101 Commerce Drive | Exton | PA | 19341 | | | | | | | | x | x | | x |
| Jennifer Keller | lberson@westwhiteland.org | West Whiteland Police | https://www.westwhiteland.org | 101 Commerce Drive | Exton | PA | 19341 | | | | | | | | x | x | | |
| Lee Benison | yjohnson@westwhiteland.org | West Whiteland Police | https://www.westwhiteland.org | 101 Commerce Drive | Exton | PA | 19341 | | | | | | | | x | | | x |
| Yvette Johnson | tbernot@westtownpolice.org | Westtown Police | https://chester.crimewatchpa.com/wegopd/53548 | 1041 Wilmington Pike | West Chester | PA | 19382 | | | | | | | | x | x | | |
| Brenda M. Bernot | dmoore@willistown.pa.us | Willistown township police | https://www.willistown.pa.us | 688 Sugartown Road | Malvern | PA | 19355 | | | | | | | | x | x | | x |
| Diane Moore | | Private Person | School Board Actor | | | | | x | x | x | x | x | x | x | x | x | x | x |
| Jill Hardy | | Private Person | School Board Actor | 170 Dallas Street | Atglen | PA | 19310 | x | x | x | x | x | x | x | x | x | x | x |
| Jeff Curtis | | Private Person | School Board Actor | 3718 Homevill Road | Cochranville | PA | 19330 | x | x | x | x | x | x | x | x | x | x | x |
| Brian Norris | | Private Person | School Board Actor | 1401 Homeville Road | Cochranville | PA | 19330 | x | x | x | x | x | x | x | x | x | x | x |
| Lisa Bowman | | Private Person | School Board Actor | 7151 White Oak Road | Christiana | PA | 17509 | x | x | x | x | x | x | x | x | x | x | x |
| Sam Garrow | | Private Person | School Board Actor | 21 Harvest Drive | Cochranville | PA | 19330 | x | x | x | x | x | x | x | x | x | x | x |
| Jared Zimmerman | | Private Person | School Board Actor | 303 Fawn lane | Cochranville | PA | 19330 | x | x | x | x | x | x | x | x | x | x | x |
| Charlie Koennecker | | Private Person | School Board Actor | 227 Old Racetrack Road | Parkesburg | PA | 19365 | x | x | x | x | x | x | x | x | x | x | x |
| Brian Fox | | Private Person | School Board Actor | 17 Harvest Drive | Cochranville | PA | 19330 | x | x | x | x | x | x | x | x | x | x | x |
| Matt Hurley | | Private Person | School Principal Actor | 228 Highland Road | Atglen | PA | 19310 | x | x | x | x | x | x | x | x | x | x | x |
| John Propper | | Private Person | School Superintendent actor | 228 Highland Road | Atglen | PA | 19310 | x | x | x | x | x | x | x | x | x | x | x |
| Michelle Omer | | Private Person | School Board Actor | | | | | x | x | x | x | x | x | x | x | x | x | x |