IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN RYAN MILLER, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS NELLING, et al., <br><br> Defendants. | CIVIL ACTION <br><br> NO. 22-3329-KSM |

MEMORANDUM

**MARSTON, J.**                                                                                    February 8, 2023

*Pro Se* Plaintiff John Ryan Miller brings this action against dozens of school district officials and law enforcement officers from various localities across southeastern Pennsylvania. (*See* Doc. No. 1.) His claims principally arise out of the Octorara School Board's enforcement of a policy that governs public participation in school board meetings. (*Id.* at 66–93.) Plaintiff contends that the policy is unconstitutional and that members of the Octorara School Board conspired with local public servants to prevent him from speaking at or attending school board meetings. (*Id.*) Among the named defendants is Defendant Gerald Bonmer,[1] who serves as the Police Chief of the Coatesville Veterans Affairs Medical Center Police Department. (*Id.* at 1.) Presently before the Court is Defendant Bonmer's Motion for More Definite Statement, in which he claims that Plaintiff's Complaint is so vague and ambiguous that he cannot "meaningfully respond" to the claims contained therein. (Doc. Nos. 209, 228.) Plaintiff opposes the motion. (Doc. No. 213.) For the following reasons, Defendant's motion is denied.

---

[1] Defendant Bonmer's last name is incorrectly spelled as "Boomer" in Plaintiff's Complaint. (*See id.* at 1, 3.)

I.     **FACTUAL BACKGROUND**

At this stage, the Court takes as true the facts alleged in Plaintiff's Complaint. *See Energy Intel. Grp. Inc. v. PECO Energy Co.*, No. CV 21-2349-KSM, 2021 WL 4243503, at *1 (E.D. Pa. Sept. 17, 2021) (accepting facts in Plaintiff's complaint as true when considering motion for more definite statement).

   A.     **The January 24 Meeting**

Plaintiff alleges that he first attended a school board meeting on January 24, 2022 after he had been "engaged by several parents of students enrolled in Octorara School District" to attend the meeting on their behalf and speak during the public comment period. (Doc. No. 1 at ¶¶ 38, 73.) According to Plaintiff, "the engagement was related to parental concerns, regarding actions/consequences, resulting from policy enforcement, mandates, guidelines, and other harms which children were experiencing within Octorara School District through their administration and actions through elected School Board members." (*Id.* at ¶ 38.) Before Plaintiff spoke, Octorara School Board President Brian Fox[2] asked Plaintiff to provide his name and address in accordance with "District Policy 903."[3] (*Id.* at ¶ 74.) Plaintiff told President Fox that he believed he had "no duty nor obligation to provide the requested information" under the United

---

[2] President Fox is also a named defendant in this action. (*See id.* at 1.) On December 29, 2022, President Fox filed a motion to dismiss Plaintiff's claims against him. (Doc. No. 215.) As of the date of this Order, that motion remains under advisement.

[3] Plaintiff did not attach a copy of "District Policy 903" to his Complaint, but the Court takes judicial notice of the policy, which is in the Octorara School Board Policy Manual on Octorara School District's website. Policy 903 reads, in part, as follows: "The Board requires that public participants be residents or taxpayers of this district, a parent/guardian of any district student, any district employee, or any district student. Participants must be recognized by the presiding officer and must preface their comments by an announcement of their name and municipality. Each statement made by a participant shall be limited to three (3) minutes duration for a total of thirty (30) minutes per public comment opportunity." Octorara Area School District Website, *School Board – Policies*, "Policy 903 – Public Participation in Board Meetings," https://go.boarddocs.com/pa/octo/Board.nsf/Public# (last visited February 1, 2023).

States Constitution, but after some "back-and-forth" with President Fox, he nevertheless provided his name and the fact that he is a resident in Chester County and proceeded to make his public comment. (*Id.* at ¶¶ 75–90.)

After that meeting, Plaintiff claims that he "obtained a host of public records documents, sent additional notice of warning,[4] attempting to reason and correct the mis-statements and mis-representations regarding policy and constitutional rights." (*Id.* at ¶ 98.) Plaintiff also sent "communications" to the Chester County District Attorney and detectives at the Chester County Police Department regarding the "unlawful acts perpetrated by the board members." (*Id.* at ¶¶ 99–101.) Specifically, Plaintiff emailed Chester County Detective John O'Donnell,[5] explaining how he believed the Octorara School Board had violated his rights. (*Id.* at ¶ 101.) In his correspondence with Chester County law enforcement officials, he explained that he would "seek redress/remedy if Plaintiff's rights were violated further." (*Id.* at ¶ 104.) To that end, he provided law enforcement with "role-play scenarios, which created a base of expectations and how the Plaintiff would conduct himself if/when Plaintiff could encounter law enforcement" and described "actions [Plaintiff would take] if Plaintiff were to encounter public servants who might violate their oath to their position." (*Id.* at ¶¶ 102–08.) The Chester County District Attorney's Office, in conjunction with the Chester County Police Department, subsequently circulated Plaintiff's correspondence to other local police departments via email, "with the implication that

---

[4] Plaintiff notes throughout his Complaint that he sent several "advance notices" to school board officials and to law enforcement regarding his intent to speak at school board meetings and his belief that public servants were acting in an unconstitutional manner. (*Id.* at ¶¶ 61, 71, 83–87, 92, 93, 95, 98, 105, 114, 116, 206, 368.)

[5] Detective O'Donnell is also a named defendant in this action. (*See* Doc. No. 1 at 1.) On December 6, 2022, Detective O'Donnell filed a motion to dismiss Plaintiff's claims against him. (Doc. No. 204.) As of the date of this Memorandum, that motion remains under advisement.

the Plaintiff's exercise of his constitutional rights is suspicious and allegedly suggest criminal behavior in nature." (*Id.* at ¶ 109.)

    **B.**    **The February 14 Meeting**

Plaintiff attempted to attend another Octorara School Board meeting on February 14, 2022. (*Id.* at ¶ 120.) As he pulled into the school parking lot, Plaintiff saw Pennsylvania State Troopers and to avoid any interactions with police, he "decided to relocate and park his vehicle at an adjacent parking lot." (*Id.* at ¶ 122.) Plaintiff then walked to the school and began a live video recording as he approached the school entrance. (*Id.* at ¶¶ 121–23.) Plaintiff encountered Octorara Junior-Senior High School Principal John Propper[6] standing outside the school, who informed him that the meeting had been cancelled.[7] (*Id.* at ¶ 126.) After Plaintiff drove away, he claims that he was followed and eventually pulled over by Pennsylvania State Trooper Kevin Kochka.[8] (*Id.* at ¶¶ 131–34.) Trooper Kochka told Plaintiff he was pulled over for "investigative purposes" because Plaintiff was "driving a suspicious vehicle," and ordered Plaintiff to exit his vehicle. (*Id.* at ¶¶ 138–42.) Trooper Kochka informed Plaintiff that he was not free to leave. (*Id.* at ¶ 142.) Additional unidentified police officers then arrived on the scene. (*Id.* at ¶ 148.) Plaintiff refused to produce his driver's license for the officers. (*Id.* at ¶ 150.)

---

[6] Principal Propper is also a named defendant in this action. (*See id.* at 1.) On December 29, 2022, Principal Propper filed a motion to dismiss Plaintiff's claims against him. (Doc. No. 215.) As of the date of this Memorandum, that motion remains under advisement.

[7] Plaintiff alleges that the school board "provided no information as to the reasoning for the meeting cancellation." (*Id.* at ¶ 126.) Plaintiff does not believe the cancellation was weather-related because "no snow was on the ground," and claims that he later discovered "through public records requests" that some of the defendants in this suit conspired to cancel the meeting because of "Plaintiff wanting to speak at the board meeting." (*Id.* at ¶¶ 126–28.)

[8] Trooper Kochka is also a named defendant in this action. (*See id.* at 1.) On December 6, 2022, Trooper Kochka filed a motion to dismiss Plaintiff's claims against him. (Doc. No. 206.) As of the date of this Memorandum, that motion remains under advisement.

Approximately 25 minutes after Plaintiff was pulled over, Plaintiff was released without a citation. (*Id.* at ¶ 153.)

### C. The March 21 Meeting[9]

Plaintiff attended the March 21, 2022 school board meeting and attempted to speak during the public comment period. (*Id.* at ¶ 159.) But President Brian Fox refused to allow Plaintiff to speak without stating his name and municipality. (*Id.* at ¶ 165.) Plaintiff refused, and as he was leaving the meeting, announced that he was "going to call the police and request the police to affect [sic] a private person arrest of the board members." (*Id.* at ¶¶ 166–67.) Meanwhile, Trooper Kochka and another unidentified police officer entered the room. (*Id.* at ¶ 168.) Plaintiff demanded that the officers arrest the school board members; they declined. (*Id.* at ¶¶ 169–70.) The officers asked Plaintiff to leave and stated that he would otherwise be charged with trespass. (*Id.* at ¶¶ 175, 177–78.) Trooper Kochka informed Plaintiff that he was no longer allowed on Octorara Area School District property, and that Plaintiff would be arrested if he returned. (*Id.* at ¶ 189.)

### D. Plaintiff's Communications with the School Board and Law Enforcement

On March 23, 2022, Plaintiff received a formal letter from Octorara Area School District Superintendent Michele Orner[10] confirming that Plaintiff is banned from school property. (*Id.* at

---

[9] Plaintiff refers to both a February 21 and a March 21 school board meeting in his Complaint. (*See* Doc. No. 1 at ¶¶ 159, 194.) The Court takes judicial notice of the Octorara School Board meeting minutes from March 21, 2022, which indicate that Plaintiff is referring to events that occurred on March 21. *See* Octorara Area School District Website, *School Board – Minutes*, "Recent Board Minutes, 2022-03-21 Regular" https://pa50000610.schoolwires.net/cms/lib/PA50000610/Centricity/Domain/48/Mar%2021-22%20Reg%20Meeting%20Minutes.docx.pdf (last visited February 8, 2023) ("A citizen who refused to introduce himself or give his municipality per Board Policy, was escorted from the Board Room by Pennsylvania State Police.").

[10] Superintendent Orner is also a named defendant in this action. (*See id.* at 1.) On December 29, 2022, Superintendent Orner filed a motion to dismiss Plaintiff's claims against her. (Doc. No. 215.) As of the date of this Memorandum, that motion remains under advisement.

¶ 194.) Plaintiff responded on March 30, 2022, with a "Letter of Intent to Sue." (*Id.* at ¶ 212.) He received a response from Octorara School District Solicitor Benjamin Pratt, Esquire[11] on April 13, 2022. (*Id.* at ¶ 215.) Because Plaintiff contends his lawsuit "is a private legal matter with private individuals," he did not respond to Mr. Pratt as he believes Mr. Pratt has "no standing or authority to represent school board members in a private litigation matter." (*Id.* at ¶ 216.)

In an apparent effort to come to a resolution regarding the enforcement of Policy 903, Plaintiff emailed President Fox on June 3, 2022. (*Id.* at ¶ 284.) President Fox maintained that the board had the authority to enforce the policy. (*Id.* at ¶ 285.) Plaintiff again communicated with President Fox and the Octorara School Board on June 9 and June 13, 2022 regarding his concerns about the policy, but those communications went unanswered by the board. (*Id.* at ¶¶ 287–88.) Plaintiff asserts that he has since attempted to find information about school board meetings online, and that Octorara School District has not posted any information on its website. (*Id.* at ¶¶ 290–308.)

Plaintiff also requested any communications between "Chester County Detectives, local law enforcement, Pennsylvania State Troopers, [and] School Board officials, through the RTKL [Pennsylvania's Right-to-Know Law, 65 P.S. §§ 67.101–67.3104] process," regarding Plaintiff's interactions or grievances with the Octorara School Board. (*Id.* at ¶¶ 119, 283, 290.) According to Plaintiff, these requests "produced no documents." (*Id.* at ¶ 119.) Plaintiff asserts that these documents were not produced because they were destroyed. (*Id.* at ¶¶ 402–04.)

---

[11] Mr. Pratt is also a named defendant in this action. (*See id.* at 1.) On November 2, 2022, Mr. Pratt filed a motion to dismiss Plaintiff's claims against him. (Doc. No. 108.) As of the date of this Memorandum, that motion remains under advisement.

6

## II. Procedural History

Plaintiff filed this lawsuit on August 18, 2022. (*Id.*) He asserts ten counts[12] against 84 defendants, arising out of alleged violations of the First Amendment, Fourth Amendment, Fourteenth Amendment, two federal criminal statutes, *see* 18 U.S.C. §§ 242, 2071, and the Pennsylvania Sunshine Act, *see* 64 Pa. C.S. §§ 701–716. (*Id.* at ¶¶ 330–412.) Plaintiff attached a "Defendant Matrix" at the end of his Complaint, which identifies the specific claims brought against each defendant. (*Id.* at 100–01.)

On December 9, 2022, Defendant Bonmer filed this Motion for More Definite Statement, seeking clarification as to the factual grounds and legal allegations against him. (*See* Doc. No. 209.) He argues that although his name appears in the case caption and Plaintiff's "Defendant Matrix," the Complaint is otherwise "devoid of any allegations involving Chief Bonmer, the Coatesville Veterans Affairs Police Department, or the Coatesville Veterans Affairs Medical Center." (*Id.* at 4.) He asserts that it is "impossible to discern what claims, if any, [Plaintiff] is asserting against Chief Bonmer, and the basis for any claims." (*Id.* at 5.) He also claims that it is "impossible to determine whether [Plaintiff] is suing Chief Bonmer in his individual capacity or in his official capacity." (*Id.* at 9.) As such, Defendant Bonmer contends that he is unable to respond to the Complaint as it is currently pled.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Rule 12(e) motions are necessary where the complaint does not disclose the facts underlying a

---

[12] There appears to be a typographical error in Plaintiff's "Defendant Matrix" which lists a "Count XI," but there is no Count XI in the body of the Complaint. (Doc. No. 1 at 100.)

7

plaintiff's claim for relief; in this situation, even under the liberal notice pleading standard established by the Federal Rules of Civil Procedure, the defendant cannot be expected to frame a proper, fact-specific defense." *Energy Intel. Grp. Inc.*, 2021 WL 4243503, at *2 (quoting *Thomas v. Independence Twp.*, 463 F.3d 285, 301 (3d Cir. 2006)) (cleaned up). Motions under Rule 12(e) are "appropriate when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself." *Strike 3 Holdings, LLC v. Doe Subscriber Assigned IP Address 68.82.141.39*, 370 F. Supp. 3d 478, 483 (E.D. Pa. 2019) (quoting *Ulearey v. PA Servs., Inc.*, Civil Action No. 16-4871, 2017 WL 1283946, at *3 (E.D. Pa. Apr. 6, 2017)) (cleaned up). "Motions for a more definitive statement are generally disfavored and are used to provide remedies for unintelligible pleadings rather than as correction for lack of detail." *Godfrey v. Upland Borough*, 246 F. Supp. 3d 1078, 1086 (E.D. Pa. 2017) (quoting *Stoneback v. ArtsQuest*, Civil Action No. 12-3286, 2012 WL 4963624, at *10 (E.D. Pa. Oct. 17, 2012)).

Motions under Rule 12(e) "must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). "As such, courts considering Rule 12(e) motions must conduct a fact-specific inquiry, closely reviewing the allegedly deficient filing. Factors courts consider in weighing Rule 12(e) motions include: (1) whether the purportedly deficient filing provides enough information for the opposing party to conduct its own factual investigation, (2) the degree to which the moving party is able to identify the claims against it, and (3) whether there is a good-faith explanation for why certain information was excluded from the filing." *Energy Intel. Grp. Inc.*, 2021 WL 4243503, at *2.

## IV. DISCUSSION

Of the ten counts brought against the various defendants, Plaintiff identifies Defendant Bonmer in the "Defendant Matrix" under the column labeled "Count IX." (Doc. No. 1 at 100.) In the body of the Complaint, Count IX is entitled, "DESTRUCTION OF PUBLIC RECORDS IN VIOLATION OF 18 U.S.C. § 2071." (*Id.* at ¶¶ 402–04 (emphasis in original).) The statute to which Plaintiff cites—18 U.S.C. § 2071—is a federal statute that criminalizes the destruction of public records. The specific allegations in Count IX are as follows: "Defendants identified [in] Defendant Matrix under Claim 9, in response to a public record request, was [sic] denied such a record exists. Plaintiff [sic] evidence reveals that a document does exist and that the Defendants in ability [sic] to produce such document … affirmed the nonexistence of a public record. Named defendants operated in their own capacity to destroy a public record, which included exculpatory information, in addition to fabrications to malign, defame, slander, the lawful actions of the Plaintiff." (*Id.* at ¶¶ 403–04.) Plaintiff also avers that he "incorporates all factual allegations contained in the foregoing paragraph as though fully set forth herein." (*Id.* ¶ 402.)

After reviewing Plaintiff's Complaint in its entirety, the Court is satisfied that there is sufficient information pleaded for Defendant Bonmer to respond to the factual and legal grounds underlying Count IX. To comply with Rule 12(e), Plaintiff's Complaint must give Defendant Bonmer "enough information to form a fact-specific defense to this claim." *Energy Intel. Grp. Inc.*, 2021 WL 4243503, at *2. Here, Plaintiff alleges that Chester County law enforcement officials emailed local police departments and security personnel about his grievances with the Octorara School Board. (Doc. No. 1 at ¶ 109.) Plaintiff states that he requested documentary proof of any responses to that email via Pennsylvania's Right-to-Know Law ("RTKL"), but that

his requests on this subject "produced no documents." (*Id.* at ¶¶ 119, 283, 290.) Plaintiff asserts that these documents were not produced because they were destroyed. (*Id.* at ¶¶ 402–04.) Although Defendant Bonmer's name may only appear twice in the Complaint, a plain reading of Plaintiff's narrative identifies him as one of the local police officials who destroyed his email communications with Chester County law enforcement regarding Plaintiff's interactions with the school board.

Plaintiff expounded on this claim in his response brief, in which he attached a copy of "the broadcast email" sent from Chester County Detectives on February 22, 2022 to all municipal chiefs of police and other law enforcement leadership on academic campuses.[13] (Doc. No. 213 at 5.) The Chester County Detectives requested that law enforcement contact the Detectives if they had any contact with an individual named "Robert Smith."[14] (*Id.*) Defendant Bonmer is listed as a recipient of this email, which was sent to dozens of other local police chiefs by Chester County Detective Chief David Sassa.[15] (*Id.*) The email reads as follows:

> Good Morning Chiefs:
>
> A person who identified themselves as "Robert Smith" … sent an email to the District Attorney's Office complaining about school district meeting violations related to the PA Sunshine Act. Smith did not identify the school district in the email. The conclusion of the email states, "I have provided advanced notice to law enforcement and countless other public servants making my best attempt at being reasonable. However, these are unreasonable times and a wise person told me, hope for the best and plan for the worst.

---

[13] Plaintiff explains that this email was produced in response to a RTKL request. (*See* Doc. No. 213 at 5–6.)

[14] Plaintiff appears to admit that he is the "Robert Smith" identified in this email. (*See* Doc. No. 213 at 5–6.)

[15] Detective Sassa is also a named defendant in this action. (*See* Doc. No. 1 at 1.) On December 6, 2022, Detective Sassa filed a motion to dismiss Plaintiff's claims against him. (Doc. No. 204.) As of the date of this Memorandum, that motion remains under advisement.

> It is my hope that I encounter reasonable people, pausing, verifying in advance of making an unlawful decision."
>
> If anyone has had any contact with this person or email address, please contact as soon as possible.

(*Id.* at 7–8.) It appears that some individuals responded to this email, as Detective Sassa later wrote: "Chiefs, thank you all for your responses and emails. The school district has been identified as Octorara." (*Id.* at 7.) Plaintiff asserts that he submitted 53 RTKL requests to "all named individuals contained in the email originating from Detective Sassa," of which he claims only two unidentified respondents complied, and "thus were not named defendants." (*Id.* at 9, 18.) Defendant Bonmer presumably did not respond to Plaintiff's RTKL request, as he is a named defendant in this action. According to the allegations contained within Count IX, this failure to respond arises out of Defendant Bonmer's alleged destruction of the relevant documents.

Defendant Bonmer contends that his "name merely appearing on the recipient line of an email does not provide sufficient notice of the factual or legal basis of any claims against him." (Doc. No. 228 at 1.) He asks the Court to rely on *Shaner v. Knappenberger*, No. CV 19-2441, 2020 WL 3412555 (E.D. Pa. June 22, 2020), in which the court "granted a defendant's Rule 12(e) motion where the complaint contained only one factual allegation regarding that defendant and did not specify which right plaintiff believed that defendant had violated, when the plaintiff's rights were violated, or the manner in which the violation occurred." (Doc. No. 209 at 8–9.) Similarly, he cites to *United States Attorney General v. PNC Bank*, No. CV 07-417, 2008 WL 11515398 (E.D. Pa. Feb. 12, 2008), where the court granted defendant's motion for more definite statement because "the complaint cited to various sections of a law but failed to articulate how the defendant allegedly breached its obligations under the law." (*Id.* at 9.) But

11

these cases are easily distinguishable. Here, Plaintiff has specified the statute he believes was violated and how that violation occurred; namely, that Defendant Bonmer received an email from Chester County law enforcement, allegedly responded to that email, and then violated 18 U.S.C. § 2071 by destroying any record of his response.[16] *See Christopher v. City of Philadelphia*, No. 2:13-CV-04784-WY, 2014 WL 460766, at *4 (E.D. Pa. Feb. 5, 2014) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests."). Plaintiff's Complaint is admittedly lengthy, but the Court does not agree that his pleading is so "unintelligible" that Defendant Bonmer is unable to respond. *See PNC Bank*, 2008 WL 11515398 at *3 (explaining that *pro se* pleadings are usually read "liberally" and must be "unintelligible" to meet standard for granting a Rule 12(e) motion).

And, although Defendant Bonmer contends that he cannot determine whether he is being sued in his individual or official capacity, Plaintiff states—several times—that the public officials named in his Complaint acted in a manner so "unreasonable" that they were "not acting in their public servant capacity, but acting in their *private person capacity*, or under 'color of law.'" (Doc. No. 1 at ¶ 19 (emphasis added).) Plaintiff claims that the "countless public servants" identified in this lawsuit "have chosen, *in their private capacity*, to perpetrate a number

---

[16] Defendant Bonmer is apparently aware that "Miller intends to pursue a claim against Chief Bonmer under 18 U.S.C. § 2071," and is prepared to craft a motion to dismiss this claim. (*See* Doc. No. 209 at n.3.) To that end, he argues that any claim arising out of 18 U.S.C. § 2071 must be dismissed with prejudice because the statute "contains no civil or private right of action, and the Third Circuit has counseled against implying a private right of action in criminal statutes." (*Id.*) The Court is aware that courts have considered arguments as to the merits of a claim when resolving a motion for more definite statement. *See Energy Intel. Grp. Inc.*, 2021 WL 4243503, at *5 n.1; *PNC Bank*, 2008 WL 11515398 at *1. But, here as Plaintiff is proceeding *pro se*, the Court is mindful that he may not have known to address this argument detailed in a footnote to Defendant's motion for a more definite statement. For this reason, the Court will not convert Defendant Bonmer's motion into a motion to dismiss. Defendant Bonmer may raise this argument in a separate motion to dismiss.

of civil rights deprivations." (*Id.* at ¶ 20 (emphasis added).) According to Plaintiff, because the defendants "were functioning as 'actors,' in their '*private person capacity*,'" they apparently "surrendered their legal, qualified immunity, and tax payer [sic] funded defense to their Color of Law actions." (*Id.* at ¶ 50 (emphasis added).) Unless otherwise stated, Plaintiff appears to seek relief from "*all defendants* in their *private person capacity*…." (*Id.* at ¶ 60 (emphasis added).) And, as to Count IX, Plaintiff states that the named defendants operated in their "*own* capacity" in destroying public records. (*Id.* at ¶ 404 (emphasis added).) From these allegations, it appears evident that Defendant Bonmer is being sued in his individual capacity.[17]

## V.   CONCLUSION

For these reasons, the Court finds that Plaintiff's Complaint is neither so vague nor so ambiguous that Defendant Bonmer cannot reasonably prepare a response. Accordingly, Defendant Bonmer's motion is denied. An appropriate Order follows.

---

[17] On November 22, 2022, Assistant U.S. Attorney Mansi Shah, Esquire filed a "Limited Entry of Appearance" on behalf of Defendant Bonmer, in which she stated that the United States assumed that Defendant Bonmer is "being sued in his official capacity only" and that her appearance on his behalf "is only in his official capacity, not his individual capacity." (Doc. No. 176 at 1–2.) She clarified if "Plaintiff intended to sue Chief Bonmer in his individual capacity," Defendant Bonmer could not be represented by the U.S. Attorney's Office until he "(1) receives DOJ representative approval; and (2) is properly served with process." (*Id.* at n.1.) To this end, Ms. Shah noted that Defendant Bonmer had not yet been properly served in accordance with the Federal Rules of Civil Procedure, namely, that service had not been effectuated under Rule 4(i)(2). (Doc. No. 209, n.1; Doc. No. 176, n.2.) But this provision governs service of a federal official in an *official* capacity. Where, as here, a federal official is named in a lawsuit in an *individual* capacity, service must comport with Rules 4(i)(1) and 4(i)(3). The Court's review of the docket confirms that neither the United States nor Defendant Bonmer has executed a waiver of service in this case, and that no proof of service has been filed as to either party.