**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **JOHN RYAN MILLER,** | **CIVIL ACTION** |
| Plaintiff | |
| *v.* | **NO. 22-3329-KSM** |
| **THOMAS GOGGIN, et al.,** | |
| Defendants. | |

**MEMORANDUM**

**Marston, J.**                                                                                            **March 29, 2024**

Plaintiff John Ryan Miller has brought the instant action against a variety of Octorara

School District officials, the District Attorney of Chester County, and various law enforcement

officials.  He alleges that the enforcement of the Octorara School District's public participation

policy (Policy 903) and a related conspiracy among the Defendants violated his constitutional

rights.  Following this Court's opinions addressing the numerous motions to dismiss filed by the

over 80 defendants in this matter (Doc. Nos. 278, 283, 285), Plaintiff filed an Amended

Complaint in an attempt to address the various deficiencies that the Court identified. (Doc. No.

299).  Before the Court now are motions to dismiss that Amended Complaint from Defendants

Lisa Bowman, Jeff Curtis, Brian Fox, Sam Ganow, Jill Hardy, Matt Hurley, Charlie Koennecker,

Brian Norris, Michelle Orner, John Propper, Lisa Yelovich, Jared Zimmerman, (the "Octorara

Defendants") (Doc. No. 312), District Attorney Debra Ryan (Doc. No. 301), and Detective John

O'Donnell (Doc. No. 302).  For the reasons set forth below, the Court will grant these motions in

their entirety.

## I.    Background

The Court detailed the factual allegations underlying this action at length in its prior opinions.  (Doc. No. 285; *see also* Doc. No. 254 (the Court's Memorandum on Defendant's motion for more definite statement in which the Court detailed the factual allegations in the initial Complaint).)  Because the Amended Complaint adds little to what the Court previously described, and because the parties are intimately familiar with the factual allegations set forth in Plaintiff's Amended Complaint, we will refrain from repeating that factual background here. Instead, the Court will provide just a summary of the procedural history.

Plaintiff filed this lawsuit on August 18, 2022.  (Doc. No. 1.)  His original Complaint asserted ten counts against 84 defendants, arising out of alleged violations of the First Amendment, Fourteenth Amendment, two federal criminal statutes, *see* 18 U.S.C. §§ 242, 2071, and the Pennsylvania Sunshine Act.  (*Id.* at ¶¶ 330–412.)  The Court interpreted Plaintiff's First Amendment challenge to have the following four sub-arguments:  1) Policy 903, which is the Octorara School District's policy that details the procedure for public comment at school board meetings, was unconstitutional on its face; 2) Policy 903 was unconstitutional as applied to Plaintiff; 3) the Octorara School District's social media policy was unconstitutional and 4) Defendants retaliated against Plaintiff for exercising his First Amendment rights.   All Defendants filed motions to dismiss, which the Court addressed in three separate opinions.   The first opinion, issued on March 31, 2023, dismissed Plaintiff's claims arising under the two federal criminal statutes, reasoning that these statutes provide no basis for private enforcement through a civil action.  (Doc. No. 278.)  The Court's next opinion, issued on May 4, 2023, dismissed numerous Defendants due to Plaintiff's failure to respond to their motions to dismiss. (Doc. No. 283.)  And finally, on May 5, 2023, the Court issued a 58-page opinion exhaustively

addressing motions to dismiss from Defendants Ryan, O'Donnell, Goggin, Sassa, Dougherty, and the Octorara Defendants.  (Doc. No. 285.)

In its May 5, 2023 opinion, the Court granted Defendants' motions to dismiss with respect to most of Plaintiff's claims.  First, the Court dismissed all claims against Defendants Bowman, Curtis, Ganow, Hurley, Koennecker, Norris, Yelovich, Zimmerman, and Hardy, and all claims, except the civil conspiracy claim, against Defendants Ryan, Goggin, O'Donnell, Sassa, and Dougherty due to Plaintiff's failure to allege facts demonstrating their personal involvement in the conduct at issue.  (*Id.* at 10–17.)  Second, the Court addressed Plaintiff's First Amendment claims, holding that Policy 903's requirement that individuals state their name and residency, its prohibition on participants directly addressing individual board members, and its purported bar on statements that are "abusive," "irrelevant," "offensive," "inappropriate," or "personal attacks"[1] were constitutional on their face.  (*Id.* at 18–28.)  The Court also held that Plaintiff had not sufficiently alleged that Policy 903 was unconstitutional as applied to him because he had not shown that the Defendants wielded Policy 903 to prevent him from speaking. (*Id.* at 28–30.)  And the Court found that the Defendants' policy of precluding all comments on their social media sites was not viewpoint specific, and thus did not violate the First Amendment. (*Id.* at 30–34.)  Third, the Court dismissed Plaintiff's claim under the Sunshine Act, because as a matter of law, he could not bring forth such a claim against individual defendants.  (*Id.* at 41– 43.)  All of these claims were dismissed without prejudice (*id.* at 40), except for the Sunshine Act claim, which was dismissed with prejudice (*id.* at 43).

---

[1] While this language was included in Plaintiff's Complaint (Doc. No. 299 at ¶¶ 348–49), as the Court noted in its prior opinion, this language is nowhere to be found in Policy 903 (Doc. No. 285 at 25).

The Court did permit three claims to go forward, albeit in a limited manner.  First, the Court held that Plaintiff had sufficiently alleged a claim for First Amendment retaliation against Defendants Orner, Fox, and Propper related to their alerting the police when Plaintiff arrived at his second school board meeting.[2]  (*Id.* at 36–39.)  However, the Court dismissed Plaintiff's First Amendment retaliation claim related to Orner and Fox's purported false report to the state police that Plaintiff was being disruptive during a March 21, 2022 school board meeting, reasoning that the facts in the Complaint showed Plaintiff had in fact been disruptive.  (*Id.* at 39–40.)  Second, the Court held that Plaintiff had stated a class of one equal protection claim under the Fourteenth Amendment against Defendants Orner, Fox, and Propper, through his allegation that his removal from the school board meeting and subsequent ban from school property was arbitrary and different than how the school board treated other disruptive participants.  (*Id.* at 43–47.)  And finally, the Court held that Plaintiff had stated a claim for civil conspiracy under 42 U.S.C. § 1983 against Defendants O'Donnell and Ryan as to the First Amendment retaliation claim, but not as to his equal protection clause claim. (Doc. No. 47–52.)  However, the Court found that these conspiracy claims were redundant to other existing claims against Defendants Orner, Fox, and Propper, and therefore dismissed these claims with prejudice.  The Court also dismissed these claims without prejudice against Defendants Goggin, Sassa, and Dougherty, for lack of personal involvement.  (*Id.*)

The Court granted Plaintiff leave to file an amended complaint if he could address the various deficiencies set forth in the Court's opinion.  (*Id.* at 40, 52.)  And after requesting and receiving an extension (Doc. Nos. 292, 293), Plaintiff filed his Amended Complaint on June 23,

---

[2] Plaintiff alleged in his original Complaint that this second board meeting occurred on February 14, 2022. (Doc. No. 1 at ¶ 120.)  However, as discussed below, the Amended Complaint clarifies that this meeting actually occurred on March 14, 2022. (Doc. No. 299 at ¶¶ 120, 160, 181.)

2023 (Doc. No. 299).  Plaintiff's Amended Complaint appears to consist of his entire original

complaint, including those claims previously dismissed with prejudice (Counts VIII and IX),

with additional commentary in redline under most paragraphs.[3]  (Doc. No. 299.)  With the few

substantive exceptions identified later in this opinion, this commentary largely consists of

Plaintiff referring to his proposed supplemental complaint (*see, e.g.*, *id.* at ¶¶ 338–412),

lamenting the dismissal of other Defendants (*see, e.g.*, *id.* at ¶¶ 21, 202, 365), asserting that he

has evidence to present to the jury without detailing the nature of this evidence (*see, e.g.*, *id.* at ¶¶

47–48, 51–56, 129), describing the off-ramp he has provided to Defendants (*see, e.g.*, *id.* at ¶¶

164, 288, 355, 365, 437), and outlining his hopes on what discovery might reveal (*see, e.g.*, *id.* at

¶¶ 84, 87, 89, 96–97).[4]  All remaining Defendants subsequently filed motions to dismiss.  (Doc.

Nos. 301, 302, 312.)

     The same day that he filed his Amended Complaint, Plaintiff also filed a motion for leave

to file a supplemental complaint.  (Doc. No. 300.)  Plaintiff had previously sought such leave

(Doc. No. 294), but the Court denied it without prejudice due to his failure to attach his proposed

supplement.  (Doc. No. 295.)  After receiving and reviewing briefing as to this issue, the Court

denied Plaintiff leave to file a supplemental complaint. (Doc. No. 325.)

---

[3] The only thing that appears to have not been copied over from the original complaint is the caption, in violation of Federal Rule of Civil Procedure 10(a).  *See* Fed. R. Civ. P. 10(a) ("Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation.  The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties.").

[4] The above is not meant to be an exhaustive list of all new allegations included in the Amended Complaint, nor are the paragraphs cited the only examples of these types of assertions.  Instead, the Court intends only to provide examples of the types of new material contained in the Amended Complaint.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement.'" *Id.*  Factual allegations must be "enough to raise a right to relief above the speculative level," and a "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (quotation marks omitted).

That said, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Bell Atl. Corp.*, 550 U.S. at 555 (explaining that the Plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action").  It is the Defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

Because Plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 703 F.3d 239, 244–45 (3d Cir. 2013)).  "This means we remain flexible" and will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245).

6

However, "pro se litigants still must allege sufficient facts in their complaints to support a

claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.     Analysis

Plaintiff's Amended Complaint appears to reassert all the claims previously set forth in

his original Complaint.  The Court turns first to the claims previously dismissed without

prejudice.[5]  We then examine the claims that survived in the Court's prior opinion, first

addressing Plaintiff's First Amendment retaliation claim before turning to his "class of one"

equal protection claim and his § 1983 conspiracy claim.

### A.        Plaintiff's Previously Dismissed Claims

We first address the claims that the Court previously dismissed without prejudice in the

hopes that Plaintiff would provide additional factual support sufficient to state a claim.  This

includes the following claims against the following defendants:

- Plaintiff's First Amendment Retaliation Claim (Count I) as it relates to the alerting of the police at the second school board meeting on March 14, 2022 against Defendants Ryan, Goggin, O'Donnell, Sassa, Dougherty, Bowman, Ganow, Hurley, Koennecker, Norris, Zimmerman, Yelovich, Hardy, and Curtis;

- Plaintiff's First Amendment Retaliation Claim (Count I) as it relates to reporting to the police that Plaintiff had caused a disturbance at the March 21, 2022 school board meeting against Defendants Ryan, Goggin, O'Donnell, Sassa, Dougherty, Bowman, Ganow, Hurley, Koennecker, Norris, Zimmerman, Yelovich, Hardy, Curtis, Orner, Fox, and Propper;

- Plaintiff's First Amendment facial and as-applied challenges to Policy 903 and the social media policy (Counts I, III, IV, VI, VII) against Defendants Ryan, Goggin,

---

[5] Despite Plaintiff's apparent attempts to reassert them, the Court will not address the claims previously dismissed with prejudice.  Those claims are no longer viable in this or any other lawsuit.  *See Progme Corp. v. Comcast Cable Commc'ns LLC*, No. CV 17-1488, 2017 WL 5070723, at *4 (E.D. Pa. Nov. 3, 2017) ("By its very nature, a dismissal with prejudice means that it is final and binding."); *Johnakin v. Berringer*, No. 19-CV-3484, 2019 WL 4849609, at *1 (E.D. Pa. Sept. 30, 2019) ("[Plaintiff] may not reassert any claim dismissed with prejudice."); *Doyle v. Y Z Com. LLC*, No. CV2117257JMVLDW, 2021 WL 5882986, at *5 (D.N.J. Dec. 13, 2021) ("A dismissal with prejudice means that Plaintiff will be precluded from filing any future suit against Defendants concerning the allegations in the Complaint.").

O'Donnell, Sassa, Dougherty, Bowman, Ganow, Hurley, Koennecker, Norris, Zimmerman, Yelovich, Hardy, Curtis, Orner, Fox, and Propper;

- Plaintiff's equal protection "class of one" claim (Count II) against Defendants Ryan, Goggin, O'Donnell, Sassa, Dougherty, Bowman, Ganow, Hurley, Koennecker, Norris, Zimmerman, Yelovich, Hardy, and Curtis;

- Plaintiff's civil rights conspiracy claim (Count V) related to First Amendment retaliation against Defendants Bowman, Ganow, Hurley, Koennecker, Norris, Zimmerman, Yelovich, Hardy, Curtis, Goggin, Sassa, and Dougherty; and

- Plaintiff's civil rights conspiracy claim (Count V) related to Plaintiff's class of one equal protection claim against Defendants Ryan, Goggin, O'Donnell, Sassa, Dougherty, Bowman, Ganow, Hurley, Koennecker, Norris, Zimmerman, Yelovich, Hardy, and Curtis.

The Court's thorough review of the Amended Complaint reveals that it has failed to cure any of the deficiencies set forth in this Court's prior opinion.[6]  (Doc. No. 285.)  Indeed, as

---

[6] For example, the Court previously dismissed the claims against all the members of the Octorara School District besides Defendants Orner, Fox, and Propper because Plaintiff failed to even mention them in the body of the Complaint, let alone demonstrate their personal involvement.  (Doc. No. 285 at 15–17.)  In his Amended Complaint, Plaintiff again fails to mention all but two of these Defendants.  And the two that he does mention are referenced only in passing and in a manner unrelated to his claims.  (Doc. No. 299 at ¶ 20 (explaining that Defendant Curtis received a notice of a "Color of Law" violation from Plaintiff); *id.* at ¶ 318 (noting that "depositions and discovery will require defendant Bowman to produce the documentation that supports the representations defendant Bowman made on the public record that the Sunshine Act, is a 'lawful' requirement emposed [sic] upon School Boards to require citizens to state their name and municipality").  In his briefing Plaintiff repeatedly asserts that these individuals are liable because they "received notice of warning not to deprive Plaintiff of his constitutional rights prior to March 21, 2022."  (Doc. No. 314.)  But for nearly all of these Defendants, this allegation is nowhere to be found in the body of the Amended Complaint.  And even more significantly, Plaintiff fails to explain how these warnings fit into any of his causes of action, especially in light of the Court's prior holding that Policy 903 was constitutional on its face and as applied, which Plaintiff doesn't meaningfully address in the Amended Complaint.

As another example, the Court previously dismissed Plaintiff's First Amendment facial and as-applied challenges to Policy 903 and the social media policy.  (Doc. No. 286 at 18–34.)  Rather than address the deficiencies the Court identified, Plaintiff continues to reassert, in conclusory fashion, the same justification for why the Board's policies violated his constitutional rights and bemoans that these policies are still in effect.  (*See, e.g.*, Doc. No. 299 at ¶¶ 55, 164, 188, 285, 302, 303, 307, 367.)  Indeed, in his briefing Plaintiff appears to acknowledge this tactic, claiming that the Court can reverse itself, as Plaintiff asserts the Supreme Court recently did regarding the right to an abortion.  (*See* Doc. No. 316 at 8 ("The implication is that Courts never 'reverse' a decision with the same Constitutional statement.  Interloper may want to explore the case of Roe v Wade . . . .").)  The closest Plaintiff gets to addressing the faults of his First Amendment challenge is pointing to evidence that the Board previously used Policy 903 to prevent a separate individual, Mary Ellen Harris, from speaking because she was not a resident.  (Doc.

detailed above, Plaintiff's amended complaint largely consists of irrelevant commentary on his previous allegations.[7] *See supra* at 5. And because the Court already gave Plaintiff a chance to add the requisite detail to these claims and he failed to do so, we find that further amendment would be futile, and will dismiss these claims with prejudice. *See Clark v. Kalteski*, No. 5:22-CV-81-JDW, 2022 WL 1172975, at *4 (E.D. Pa. Apr. 20, 2022) (dismissing claims with prejudice where the Plaintiff was previously provided an opportunity to add required detail but failed to do so); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (finding that "leave to amend would be futile" where the Plaintiff already had "two chances to tell his story"); *cf. Stephanatos v. Cohen*, 236 F. App'x 785, 787 (3d Cir. 2007) (dismissing complaint pursuant to Rule 8 with prejudice where it consisted of 150 pages of allegations and 500 pages including exhibits).

## B.    First Amendment Retaliation

The Court turns next to Plaintiff's claim for First Amendment retaliation against Defendants Orner, Propper, and Fox.

As outlined in our prior opinion, to establish a claim that a public official retaliated against a private citizen in violation of the First Amendment, the citizen must establish that:

---

No. 299 at ¶ 182.) But this too fails to demonstrate that Policy 903 was unconstitutional either on its face or as applied *to Plaintiff.*

[7] Plaintiff uses most of his briefing to discuss his belief that the Defendant school board members are improperly paying their legal fees with municipal funds and that defense counsel is an "interloper" to whom he doesn't need to respond. (Doc. No. 299 at ¶¶ 17, 217; Doc. No. 314 at 1–3; Doc. No. 316 at 1–5.) However, Plaintiff's characterization and attack of defense counsel is not helpful. Plaintiff does not explain how this assertion relates to any of the claims set forth in his Amended Complaint. And as discussed in this Court's Order regarding Plaintiff's supplemental complaint, which made similar allegations, the appropriate vehicle for Plaintiff to raise such arguments is a motion to disqualify, not his Amended Complaint or briefing in response to Defendants' motion to dismiss. (Doc. No. 320.) However, the Court notes that based on our review of the documents presented in this matter to date, the Court fails to see how a motion to disqualify would be appropriate in these circumstances.

"(1) he engaged in conduct or speech protected by [the] First Amendment, (2) that [the] public official took adverse action against the citizen, and (3) that the adverse action was prompted or caused by the citizen's exercise of First Amendment rights." *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 431 (E.D. Pa. 2000) (cleaned up). With regard to the second prong Plaintiff must allege that he suffered a "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017). And as to the third prong, Plaintiff can "establish the requisite causal connection by showing either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 759 (3d Cir. 2019) (internal quotation marks omitted).

The Court previously found that Plaintiff had stated a viable claim for First Amendment retaliation regarding his encounter with the state police following his attempts to attend his second school board meeting. (Doc. No. 285 at 36–39.) The Court reasoned that Plaintiff's comment at the January 24, 2022 meeting was protected speech, that the Defendants alerting the police was sufficient to deter a person of ordinary firmness to not exercise their constitutional rights, and that there was "unusually suggestive" temporal proximity sufficient to meet the causation element because Plaintiff averred that this encounter with the police occurred on February 14, 2022, just three weeks after his appearance at the school board meeting.[8] (*Id.*) While the Court's analysis remains unchanged as it relates to the first two prongs, the Amended

---

[8] As noted above, the Court previously dismissed Plaintiff's retaliation claim as it relates to Orner and Fox's report to police that Plaintiff was disruptive at the March 21, 2022 school board meeting because Plaintiff's conduct failed to meet the first element of a *prima facie* case of First Amendment retaliation. (Doc. No. 285 at 39–40.) Nothing in the Amended Complaint undermines this analysis.

Complaint clarifies that the cancelled meeting and traffic stop on which Plaintiff premises his claim occurred on *March* 14, 2022, not *February* 14, 2022.[9]  (Doc. No. 299 at ¶¶ 120, 160, 181.) Thus, Defendants retaliatory conduct (alerting the police) occurred nearly *seven weeks* after his protected speech at the January 24, 2022 school board meeting.  Roughly two months is too prolonged to demonstrate temporal proximity sufficient to create an inference of causation.  *See Yu v. U.S. Dep't of Veterans Affs.*, 528 F. App'x 181, 185 (3d Cir. 2013) (providing that temporal proximity is "unusually suggestive" where it occurs "within a few days but no longer than a month" after the protected conduct); *DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010) (finding two months between the protected speech and retaliatory action was not unusually suggestive); *Conklin v. Warrington Twp.*, No. CIV.A. 1:06-CV-2245, 2008 WL 2704629, at *12 (M.D. Pa. July 7, 2008) (same); *Fischer v. Transue*, No. 04–cv–2756, 2008 WL 3981521, at *10 (M.D. Pa. Aug. 22, 2008) (observing that for temporal proximity, the case law suggests that "the difference in time must be measured in days, rather than in weeks or months, to establish causation on its own"); (*see also* Doc. No. 285 at 39 ("Unusually suggestive temporal proximity means within a few days but no longer than a month.") (quoting *Kostin v. Bucks Cmty. Coll. (Nursing Dep't)*, No. CV 21-850-KSM, 2022 WL 952729, at *11 (E.D. Pa. Mar. 30, 2022))). And because the Amended Complaint lacks sufficient evidence of repeated antagonism between January 24 and March 14 to make up for this lack of temporal proximity, Plaintiff has failed to meet the causation element of a First Amendment retaliation claim.[10]

---

[9] Plaintiff asserts that this difference in dates reflects a "minor error" by the Court.  (Doc. No. 314 at 10.) However, a review of the original Complaint reveals that Plaintiff in fact averred that this meeting occurred on February 14, 2022.  (*See* Doc. No. 1 at ¶¶ 118, 120.)  In other words, the error was Plaintiff's, not the Court's.

[10] There is also some indication in the record that the Defendants did not realize that the person they reported as suspicious was the same person who spoke at the January 24, 2022 meeting until after

In sum, because Plaintiff has not pleaded facts sufficient to show that the state police

were called as a result of his speech at the January 24, 2022 school board meeting, he has failed

to state a claim for First Amendment retaliation.[11]   This claim is therefore dismissed.[12]

### C.       Equal Protection and Qualified Immunity

The Court turns next to Plaintiff's class of one equal protection claim against Defendants

Orner, Fox, and Propper.   To state a class of one claim under the Equal Protection Clause, "a

plaintiff must allege that (1) the defendant treated him differently from others similarly situated,

---

Plaintiff was stopped by police.   (*See* Doc. No. 299-2 at 14.)   This disconnect would further undermine any inference of retaliatory animus on the part of Defendants.

[11] Plaintiff responds by pointing to the various "notices" and documents that he purportedly sent to school board members after the January 24, 2022 meeting.   (Doc. No. 314 at 10–11.)   It's not exactly clear how Plaintiff believes these notices fit into the analysis.   To the extent Plaintiff is arguing that these documents were protected conduct from which the Court should measure temporal proximity, he still has not shown causation.   Even assuming that these private communications were protected conduct, Plaintiff does not provide the date that these documents were sent, which prevents the Court from finding that there was "unusually suggestive temporal proximity" between these notices and the Defendants alerting the police.   (Doc. No. 299 at ¶ 98 (providing only that notices were sent "subsequent to the 1/24/2022 board meeting").)   And to the extent these notices consist of the material attached as Exhibit 1 to the Amended Complaint, the Court notes that these documents are also dated January 24, 2022 and thus faces the same temporal proximity issue addressed above.   (Doc. No. 299-2 at 2–9.)   If on the other hand, Plaintiff is suggesting that these letters evidence "a pattern of antagonism," the Court fails to see how Plaintiff's notices and the Defendants' lack of response thereto constitutes evidence connecting his speech on January 24, 2022 to his traffic stop two months later.   This is especially true if these notices consisted of the material attached as Exhibit 1 to Plaintiff's Amended Complaint, which is not only confusing in its content, but is written from the perspective of a woman, not Plaintiff.   (Doc. No. 299 at ¶ 60 (stating that Plaintiff "repeatedly attempted to reason with defendants" and that he provided them "notice" which was attached as Exhibit 1); Doc. No. 299-2 at 2–9.)

[12] Defendants also argue that Plaintiff has failed to demonstrate that these Defendants were personally involved in the retaliatory act at issue.   *See Byars v. Sch. Dist. of Phila.*, 942 F. Supp. 2d 552, 569 (E.D. Pa. 2013) (providing that before § 1983 liability will attach, Plaintiff must establish that the defendant had "personal involvement in the alleged wrongs" which can be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence").   The Court agrees as to Defendants Fox and Orner because there is no allegation that these two individuals were involved in contacting the state police.   However, as to Defendant Propper, documents attached to the Amended Complaint demonstrate that he contacted the police to report a suspicious individual shortly after his encounter with Plaintiff in front of the school.   (Doc. No. 299-2 at 14 (email from Defendant Orner providing that Propper called the police to report a suspicious person).)   He therefore has the requisite personal involvement for a claim under § 1983.

(2) the defendant did so intentionally, and (3) there was no rational basis for the difference in

treatment." *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).  As the Court

previously discussed, Plaintiff alleges that he was arbitrarily removed by police officers from a

March 21, 2022 school board meeting and subsequently banned from school property.  (Doc. No.

285 at 43–44; Doc. No. 299 at ¶¶ 363–365.)  As evidence that he was treated differently by

Defendants, Plaintiff points to another participant who at a prior school board meeting was

overtly disruptive but was not removed.  (Doc. No. 299 at ¶ 365.)  The Court previously found

that these allegations were sufficient to state a class of one equal protection claim and

Defendants' motion does not ask this Court to reconsider that determination.[13]  (Doc. No. 285 at

45–46.)  Instead, Defendants argue that they are entitled to qualified immunity over this claim.[14]

The Court agrees.

---

[13] While Defendants do not raise this issue, the Court's review of the Amended Complaint suggests at
least one additional reason why a class of one equal protection claim is not viable here.  The Supreme
Court has noted that its prior cases acknowledging a class of one claim arose in situations in which there
was "a clear standard against which departures, even for a single plaintiff, could be readily assessed."
*Engquist v. Or. Dept. of Agr.*, 553 U.S. 591, 602 (2008).  On the other hand, "[t]here are some forms of
state action . . . which by their nature involve discretionary decisionmaking based on a vast array of
subjective, individualized assessments." *Id*. at 603.  In such cases, the Equal Protection Clause is not
violated where the state treats similarly situated individuals differently because this "is an accepted
consequence of the discretion granted." *Id.*  "[A]llowing a challenge based on the arbitrary singling out
of a particular person would undermine the very discretion that such state officials are entrusted to
exercise." *Id.*  As an example, the Court explained that a traffic officer who decides to stop and ticket one
speeding car as opposed to another, "even if for no discernible or articulable reason", is not liable for a
class of one equal protection claim because it "would be incompatible with the discretion inherent in the
challenged action." *Id.* at 603–04.  Here too, the decision to remove and ban Plaintiff while not removing
the other individual is a matter of the school board member's subjective and individualized assessment of
the participants' relative threat to the orderly functioning of their school board meeting and the safety of
their constituents.  The exercise of this discretion is arguably inconducive with an equal protection claim
in the same way that the Equal Protection Clause does not apply where an officer pulls over one speeding
driver as opposed to another.  However, because Defendants do not raise such an argument, and because
we find that qualified immunity applies, the Court need not reach this issue.

[14] Defendants also argue that Plaintiff has failed to demonstrate personal involvement on the part of
Defendants Propper, Orner, and Fox because there are no facts suggesting that they were involved in
either the removal of Plaintiff from the school board meeting or the failure to remove the other disruptive
participant that Plaintiff identifies in his Amended Complaint.  (Doc. No. 312 at 12–13); *see Byars*, 942
F. Supp. 2d at 569.  As to Defendant Propper, the Court agrees.  There is no allegation in the Amended

Qualified immunity prevents lawsuits against government officials to "shield" them "from harassment, distraction, and liability when they perform their duties reasonably." *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168 (3d Cir. 2016). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 735. As to this second portion of the test, the inquiry as to whether the constitutional right was "clearly established" must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Mack v. Yost*, 63 F.4th 211, 228 (3d Cir. 2023) (noting that the qualified immunity inquiry "demands a high degree of specificity" and that "courts may not define clearly established law at a high level of generality, which would avoid the crucial question whether the official acted reasonably in the particular circumstances that he or she faced") (cleaned up); *Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016) ("[W]e must attend to context; we need to 'consider the state of the existing law at the time of the alleged violation and the circumstances confronting [defendant] to determine whether

---

Complaint that Propper was even in attendance at the March 21, 2022, meeting, let alone that he was personally involved in Plaintiff's removal. Indeed, as the video Plaintiff linked in the Amended Complaint reveals, Propper was not a member of the school board, but rather was a principal in the school district. (Doc. No. 299 at ¶ 120.) But as to Defendants Fox and Orner, it is a closer call. Both individuals were arguably involved in Plaintiff's removal or ban from school property. Defendant Orner authored the letter to Plaintiff informing him that he was not permitted on school grounds. (Doc. No. 299 at ¶ 194.) And while Plaintiff makes it clear that Defendant Fox did not call for his removal from the school board meeting (Doc. No. 299 at ¶¶ 168, 175), he likely still had the requisite involvement through his knowledge and acquiescence in Plaintiff's removal by Officer Kochka. That said, Fox and Orner's involvement in failing to remove other disruptive participants is less clear. (*See* Doc. No. 299 at ¶ 365 (describing the failure to remove the other disruptive participant to be that of the school board, not any particular Defendant).) Because the Court finds that these Defendants are ultimately entitled to qualified immunity, however, we need not make a finding as to this issue.

a reasonable state actor could have believed his conduct was lawful.'"). This specificity ensures that the contours of the right are clear to a reasonable official. *Reichle v. Howards*, 566 U.S. 658, 665 (2012).

Once the right is appropriately defined, qualified immunity will be rebutted only if the right is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 664 (internal quotation marks omitted and alterations adopted); *see also Saucier*, 533 U.S. at 201 (providing that a right is only clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). This only occurs if "existing precedent" has "placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. In making this determination, "we look first for 'applicable Supreme Court precedent.'" *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017) (quoting *Mammaro*, 814 F.3d at 169). "If none exists, we consider whether there is a case of controlling authority in our jurisdiction or a robust consensus of cases of persuasive authority in the Courts of Appeals that could clearly establish a right for purposes of qualified immunity." *Id.* (internal quotation marks omitted and alterations accepted). This rigorous test ensures that officials can reasonably "anticipate when their conduct may give rise to liability for damages." *Reichle*, 566 U.S. at 664. At the motion to dismiss stage, "the defendant has the burden of pleading and proving qualified immunity." *Mitros v. Cooke*, 170 F. Supp. 2d 504, 507 (E.D. Pa. 2001); *cf. Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (providing that qualified immunity is appropriate at the motion to dismiss stage "when the immunity is established on the face of the complaint" meaning the conduct "as alleged in the complaint does not violate clearly established law"); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a

15

defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

Here, Plaintiff satisfies the first portion of the test for overcoming qualified immunity because as the Court previously found, Plaintiff has adequately pled a violation of his constitutional right to equal protection in the form of being arbitrarily removed and banned from public meetings when other disruptive participants received no such treatment.[15]  (Doc. No. 285 at 43–47.)  However, he has not met the second prong of this test because, when the right is viewed at this appropriate level of granularity, the Court finds that it was not "clearly established."  Indeed, the Court is not aware of a single Supreme Court, Third Circuit, or other Circuit opinion in which a state official was held to have violated an individual's right to equal protection by removing them from a public meeting while not previously removing other disruptive participants.[16]  Moreover, while not specifically addressing the issue of removing one participant over another, it is the established law in the Third Circuit that disruptive individuals do not have a constitutional right to remain at public meetings.  *See Barna*, 877 F.3d at 144–45 (granting qualified immunity to school board members for their removal and ban of a disruptive participant); *Galena v. Leone*, 638 F.3d 186, 213 (3d Cir. 2011) (holding that the temporary

---

[15] Plaintiff appears to dispute that he was disruptive at the March 21, 2022 meeting.  However, the Court's review of the facts alleged in the Amended Complaint demonstrates that this argument is misguided. Plaintiff refused to abide by Policy 903's requirements despite Defendant Fox repeatedly asking him to provide his name and municipality.  (Doc. No. 299 at ¶¶ 164–65.)  Plaintiff then stood up and called for the board members to be arrested.  (*Id.* at ¶¶ 165–67.)  The Court finds that this behavior is disruptive. Moreover, Plaintiff's assertion that he must have engaged in criminal conduct before being deemed disruptive (Doc. No. 314 at 11; Doc. No. 316 at 6) is unsupported.

[16] The Court's independent research revealed a handful of district court opinions permitting class of one equal protection claims premised on the wrongful removal of individuals from public meetings to move past the motion to dismiss stage.  *See Liggins v. Clarke Cnty. Sch. Bd.*, No. 5:09CV00077, 2010 WL 3664054, at *13 (W.D. Va. Sept. 17, 2010); *Grapski v. Barcia*, No. 1:10-CV-00140-MP-GRJ, 2011 WL 3477041, at *15 (N.D. Fla. Aug. 9, 2011); *Danielson v. Chester Twp.*, No. CIV.A. 13-5427 JLL, 2014 WL 3362435, at *6 (D.N.J. July 9, 2014).  However, these non-binding opinions hardly place the "constitutional question beyond debate."  *Ashcroft*, 563 U.S. at 741.

ejection of a disruptive participant from a municipal meeting did not violate the plaintiff's

constitutional rights); *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 281 (3d Cir. 2004)

(holding that the removal of a speaker from a township meeting to prevent "badgering, constant

interruptions, and disregard for the rules of decorum" did not violate the speaker's constitutional

rights); *cf. Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017) (holding that school officials were

entitled to qualified immunity for banning a plaintiff from school property because parents have

no "general and unlimited First Amendment right of access to school property"); *Jackson v.*

*McCurry*, 762 F. App'x 919, 929 (11th Cir. 2019) (same); *Dyer v. Atlanta Indep. Sch. Sys.*, 852

F. App'x 397, 402 (11th Cir. Mar. 22, 2021) (granting summary judgment for school board

defendants when they removed the plaintiff from school board meetings "for his disruptive

behavior and lack of proper decorum"); *cf. Carey v. Brown*, 447 U.S. 455, 470–71 (1980) ("[N]o

mandate in our Constitution leaves States and governmental units powerless to . . . protect the

public from the kind of boisterous and threatening conduct that disturbs the tranquility of . . .

buildings that require peace and quiet to carry out their functions, such as courts, libraries,

schools, and hospitals.") (internal quotation marks omitted).  Given both the dearth of caselaw

addressing the issue of selective removal of disruptive individuals and the clearly established law

that participants of a school board meeting have no constitutional right to remain when they are

disruptive, the Court cannot find that "every reasonable official would have understood that"

removing Plaintiff from the school board meeting where he was being disruptive violated his

constitutional rights.  Put another way, the Court finds that it would be far from clear to a

reasonable school board official that by failing to remove one disruptive participant, they are

required to suffer other disruptive participants or risk liability for a constitutional violation.  And

the Court finds that such a holding would create perverse incentives for school board members, who are tasked in part with ensuring the safety of their constituents on school property.

Because the right to be free from selective removal from public meetings when being disruptive is not "clearly established," the Court finds that Defendants are entitled to qualified immunity.[17]

### D.      Civil Conspiracy

That leaves Plaintiff's claim for civil conspiracy under § 1983 against Defendants Ryan and O'Donnell.  To state a claim for civil conspiracy under § 1983, "a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."  *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009).  Moreover, a claim for conspiracy will not lie without a "predicate federal violation" to "anchor" the claim.  *Dondero v. Lower Milford Township,* 431 F. Supp. 3d 590, 606 (E.D. Pa. 2019), aff'd, 5 F.4th 355 (3d Cir. 2021); *see also Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 141 (3d Cir. 2017) ("There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege.").

---

[17] The Court recognizes that it previously held that Defendant Orner was not entitled to qualified immunity.  (Doc. No. 285 at 53–55.)  However, in so holding, the Court emphasized that it was Defendant's burden at this stage to show that she was entitled to qualified immunity.  (*Id.* at 285.)  While they may not have met their burden previously, the Court finds that they have done so here.  Moreover, the Court previously noted that to the extent any "Plaintiff's surviving claims rested on his right to speak at the March 21 school board meeting, or his permanent ban from school property," the Third Circuit's opinion in *Barna* was instructive.  (*Id.* at 283.)  Here, Plaintiff's equal protection claim hinges on exactly this conduct.  The Court also understands Plaintiff's position to be that because he provided notice to the Defendants that they would be violating his rights, they cannot rely on qualified immunity.  (*See, e.g.*, Doc. No. 299 at p. 6, ¶ 18.)  However, the Court fails to see how these notices, which appear to consist only of Plaintiff's layman views that the Defendants were committing constitutional violations, undermine a qualified immunity defense.

The Court previously held that Plaintiff had stated a claim for civil conspiracy against Defendants Ryan and O'Donnell in relation to his First Amendment retaliation claim. (Doc. No. 285 at 49–51.) However, because this First Amendment retaliation claim is no longer viable, *supra* at 9–12, Plaintiff cannot state a claim for conspiracy against Defendants Ryan and O'Donnell on this basis. *See Dondero,* 431 F. Supp. 3d at 606 (dismissing conspiracy claim where the court found that no evidence supports the underlying constitutional claim). And as to Plaintiff's equal protection claim, the Court previously held that he had failed to allege sufficient facts demonstrating a "meeting of the minds" between Ryan, O'Donnell, and the Octorara Defendants to treat Plaintiff differently than other disruptive participants. (Doc. No. 285 at 51–52.) Nothing in the Amended Complaint changes this conclusion. Thus, Plaintiff's claim for civil conspiracy must be dismissed.

## IV.    Conclusion

For the reasons set forth above, the Court will grant the Defendants' motions to dismiss and dismiss Plaintiff's Amended Complaint in its entirety. An appropriate Order follows.[18]

---

[18] Plaintiff also dedicates a portion of his Amended Complaint to discussing his undisclosed "invisible disability" which he believes qualifies as a disability under the Americans with Disabilities Act ("ADA"). (Doc. No. 299 at 4–5.) Plaintiff appears to argue that because of this invisible disability, he is entitled to an accommodation in the form of being provided the "specific, static, complete, and permanent meaning to each and every word on any offer, motion, demand, etc. That [sic] is communicated to [him], or at least enough of the words that [he] can get a bearing." (*Id*. at 5.) However, Plaintiff has elected to proceed *pro se* in this matter, and although the Court has consistently attempted to explain its reasoning in its prior memoranda and orders as clearly as possible and has liberally construed Plaintiff's allegations, neither the Court nor defense counsel is obligated to provide any additional assistance.